# Southern Railway Co. *v.* Drake.

*Action for Death on Track.*

(Decided Jan. 13, 1910. Rehearing denied Feb. 26, 1910. 51 South. 996.)

1. *Bill of Exceptions; Time of Signing.*—Where the verdict was returned on March 11, and the bill of exceptions was signed and filed on May 9th, next, it was signed within the time allowed for signing bills of exceptions in the Bessemer City Court. (Section 18, Acts 1900-01, p. 1863.)

2. *Railroads; Injury to Trespasser; Negligence.*—Actionable negligence involves three elements; the existence of a duty owing to protect from injury, the failure to perform such duty, and injury

resulting therefrom.  Applying these rules, a railroad engineer was not negligent in failing to keep a lookout for one for whom he is under no duty to lookout, although he may have been bound to keep a lookout for others at the same place.

3. *Same; Care Acquired.*—An engineer is under no duty to exercise care to prevent injuring a trespasser on the track until his peril is actually discovered.

4. *Same; Evidence.*—The evidence in this case stated and examined and held not to show that the engineer operating the train actually saw the trespasser and understood that he was a person before the engine was within thirty feet of him.

5. *Same; Last Clear Chance.*—The last clear chance doctrine does not apply to make a railroad company negligent for injuring a trespasser on the track until the engineer knows of his presence and peril.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Action by Elizabeth V. Drake as administratrix against the Southern Railway Company for damages for the death of her intestate while trespassing upon the railroad track.  Judgment for plaintiff and the defendant appeals.  Reversed and remanded.

WEATHERLY & STOKELY, for appellant.  No duty was imposed upon the engineer until he became actually conscious of the intestate's peril, and under the facts in this case no duty was imposed on the engineer to take any steps to stop the train until the object was in fact discovered to be a human being.—*Harris v. N. C. & St. L.,* 142 Ala. 249; see also in this connection 89 S. W. 724; 77 S. W. 174; 24 S. E. 229; 12 South. 957. The deceased being a trespasser on the track no duty was imposed on the engineer to keep a lookout for him at such time and place.—*Bir. R. L. & P. Co. v. Jones,* 45 South. 177; *Southern Ry. v. Gullatt,* 43 South. 577; *Southern Ry. v. Stewart,* 45 South. 51. There was not sufficient evidence offered by plaintiff's expert in the face of the undisputed evidence in this case to require a submission of that question to the

[Southern Railway Co. v. Drake.]

jury.—*Peters v. South. Ry.,* 135 Ala. 533; *Richards v. Sloss-Sheffield,* 41 South. 288. Applying these principles of law, it is evident that the court erred in refusing the written charges for the defendant.

PINKNEY SCOTT, for appellee. The bill of exceptions was not signed within the time allowed, and hence, cannot be considered.—Section 18, Acts 1900-01, p. 1863; *Fidelity Mut. L. I. Co. v. Batson,* 136 Ala. 334. The court properly denied the application for a new trial. —*Cobb v. Malone,* 92 Ala. 630; *Ala. Mid. v. Brown,* 129 Ala. 286. The principles announced as determining the care to be observed in the management of trains to avoid injury to a person under the facts and circumstances as developed in this case will be found in the following cases.—*M. J. & K. C. v. Smith,* 45 South. 57; *Haley v. K. C. M. & B.,* 113 Ala. 649; *A. G. S. v. Guest,* 136 Ala. 530; *Southern Ry. v. Bush,* 122 Ala. 470; *C. of Ga. v. Lamb,* 124 Ala. 176; *H. A. & B. v. Robinson,* 124 Ala. 113; *L. & N. v. Brown,* 121 Ala. 221; *Southern Ry. v. Shelton,* 136 Ala. 191. On the question of lookout we call the court's attention to the following.—*Bir. R. L. & P. Co. v. Jones,* 45 South. 180; *H. A. & B. v. Robinson, supra.* On these authorities it is insisted that the court made no error in refusing defendant's written charges.

EVANS, J.—This action is predicated upon section 27, Code 1896, and is brought by the administratrix of the estate of Jackson R. Drake, deceased, against the Southern Railway Company, a corporation, to recover damages for the alleged wrongful killing of the plaintiff's intestate. The record (page 14) shows that the issues were determined between the parties by the rendition of the verdict returned by the jury on the 11th

day of March, 1908, and judgment was entered on that day. The bill of exceptions was signed and filed May 9, 1908; hence there is no merit in the appellee's point that the bill was signed out of time.—Acts 1900-01, p. 1863, § 18; *Fidelity Mut. Life Ins. Co. v. Batson,* 136 Ala. 334, 34 South. 166.

It is conceded that the intestate was a trespasser on the track of the defendant company at the time he was run upon by its train; and in view of this concession the case of the plaintiff may be considered in two phases, as presented by different counts of the complaint: First, it is alleged in one of the counts that the defendant's agent or servant, after discovering the perilous condition of the intestate, was guilty of negligence which proximately caused the death of the intestate; and, secondly, in another count, or other counts, it is alleged that the agent or servant of the defendant, acting within the scope of his duties, willfully, wantonly, or intentionally caused the death of the intestate.

The train that ran upon the deceased was a passenger train, composed of an engine and three coaches; one of the coaches being a Pullman sleeper. The engine was equipped with an electric headlight, together with all modern appliances necessary to be used in the stopping of a train "in emergency," and the coaches were also equipped with such necessary appliances. The engine was controlled by a competent engineer, and the headlight and stopping appliances were in good condition. The train had made a stop at the station on Nineteenth street, and was proceeding on its way, in a westerly course, through the corporate limits of the city of Bessemer. It was near the hour of 1 a. m. The train was moving at the rate of from 15 to 20 miles an hour, and the bell on the engine was ringing continuously. When

between Fifteenth and Fourteenth streets the engine ran upon intestate; the exact point of the accident being about 64 or 65 feet east of the Fourteenth street crossing.

It was shown without conflict in the evidence that the intestate's body was lying to the South of the track, with head on the south rail and face turned up, when the engine ran upon it. It was further shown without conflict, by the testimony of the engineer, introduced by the plaintiff, that he (the engineer) discovered the object which proved to be intestate upon attaining a point within 150 feet of it; but that he did not realize or discover that the object was a human being, or that any part of it was on the rail, until the engine was only about 30 feet from it; that, immediately upon discovering that the object was a man, he (the engineer) employed all the means at hand to stop the train and prevent it from running upon him—did all that was possible to stop train—but that, on account of the nearness of the engine to the object, the means employed proved futile, and the train, although it was stopped as quickly as possible under the circumstances, ran upon intestate's body.

There was no evidence tending to show that the engineer was keeping a lookout just prior to the moment when he discovered the object, on or near the track, 150 feet ahead of the engine; but there was evidence which tended to show that, if the engineer had been looking ahead, he might have discovered the object before his engine had approached within 300 feet of it. There was also evidence which tended to show that the engine might have been stopped within the space of 150 or within even that of 100 feet. "In every case involving negligence there are necessarily three elements essential to its existence: (1) The existence of a duty on

the part of the defendant to protect the plaintiff from injury; (2) failure of defendant to perform that duty; and (3) injury to plaintiff from such failure of defendant. When there elements are brought together, they unitedly constitute actionable negligence."—25 Cyc. 419. The principle announced above has been applied by this court. For instance, in the case of *Birmingham Railway, Light & Power Co. v. Jones*, 153 Ala. 157, 45 South. 177, following the case of *Southern Railway Co. v. Williams*, 143 Ala. 212, 38 South. 1013, we said: "Actionable negligence being a failure to discharge a legal duty to the person injured, if there is no duty there is no negligence. And even if the defendant owed the duty to keep a lookout for persons rightfully on the track, but owed none to the plaintiff because she was a trespasser, no action will lie, for the duty must be to the person injured.

Therefore, in the instant case, although it was the duty of the engineer to keep a lookout for persons using the crossing at Fourteenth street, and he may have also owed the duty to his passengers to keep a lookout for obstructions on the track, the plaintiff can take nothing in this action for the failure of the engineer to discharge such duties owed to others. Her intestate was a trespasser, and nothing was due him until the engineer discovered his perilous situation—Beach on Contr. Neg. (2d Ed.) § 203, and cases in note 5 to the text, amongst them being *Bentley v. Georgia Pac. Ry. Co.*, 86 Ala. 484, 6 South. 37; *Carrington v. Louisville & N. R. Co.*, 88 Ala. 472, 6 South. 910; *Frazier v. South & N. A. R. Co.*, 81 Ala. 185, 1 South. 85, 60 Am. Rep. 185. See, also, *B. R. L. & P. Co. v. Jones*, 153 Ala. 157, 45 South. 177; *C. of G.G Ry. Co. v. Foshee*, 125 Ala. 199, 27 South. 1006; *Montgomery's Ex. v. A. G. S. R. R. Co.*, 97 Ala. 305, 12 South. 170.

But it is insisted that the evidence tends to show that the conditions at the point where the accident occurred were such as imposed on the engineer the duty to be on the lookout for persons who might be on the track—for even trespassers. As has been stated, the plaintiff's intestate was not at or on the crossing, but was lying with his head on one of the rails, 64 or 65 feet distant from the crossing, and in the direction whence the train was approaching. Neither does the evidence show that the road or track was built in a street or public road; and whilst there is evidence which tends to show that the street crossing was frequently used by pedestrians, still, after a careful consideration of the evidence, the court is of the opinion, and accordingly holds, that the evidence falls far short of showing that people were wont to pass over, or walk along the track, with such frequency and in such numbers as to even make it a jury question whether or not the engineer owed any duty to trespassers to be on the lookout for them at the point where, and the time of night when, the disaster occurred.—S. & W. R. R. Co. v. Meadors, 95 Ala. 137, 10 South. 141; Nave's Case, 96 Ala. 264, 11 South. 391; B. R. L. & P. Co. v. Jones, 153 Ala. 157, 45 South. 177, and cases cited in the opinion of the last-mentioned case.

In view of the foregoing consideration and authorities, the crucial point in the present case, in respect to the rightfulness or not of the trial court's refusal to give the affirmative charge requested by the defendant, is whether the record discloses any evidence from which a reasonable inference might be drawn that the engineer discovered the perilous situation of the plaintiff's intestate earlier than according to his testimony he did; for, as has been seen, the testimony without conflict, shows that the train could not have been stopped with-

in the space that, according to the engineer's statement, intervened between the approaching engine and the prostrate body of the intestate when he (the engineer) first realized the peril of intestate. The engineer's tes-timony upon this point was as follows: "I saw some-thing on the south side of the track when I was about 150 feet away. It did not appear to me that this was the body of a human being, and I did not see that any part of it was on the track until I was in about 30 feet of it, and then I saw a man's head lying on the south rail, with the face turned up." Plaintiff's witness C. L. Spain, on cross-examination, testified: "With an electric headlight an engineer could or ought to see a man 300 or 400 yards; that is, I mean, if he was look-ing ahead he ought to see that distance on a straight track." Defendant's witness De Garnett testified: "If a man's whole body is lying outside of the rail, with his neck across the rail, you would have to get tolerably close to recognize it as a man. You might take an old switch tie, or anything I see them leaving along the road-bed, and you could not tell over 50 feet away, or such a matter, whether it was a person or tie. I have seen things that way, and would not know what it was until I got in a reasonable distance, say 150 feet. I would not think you could see an article less than 150 feet away that you could tell. That would depend upon the way they were dressed. If they were dressed in white clothes, or something of that kind, of course, you might see them further. His seeing an object would depend a good deal, too, whether the engineer was watching his lubricator, or his sand or water. He has duties to perform other than looking right down the rail. With a good headlight, if a cross-tie was lying on top of the rail on a perfectly straight track, you could see it, where the engineer was looking down, for 200

feet.　I think, in my best judgment, you could not see a man 200 yards.　I think you could see a man in a couple of hundred feet, and tell it was a man; that is my best judgment.　An engineer has to take chances; if he was just to look at everything, stop to see everything that would possibly look like a man, he would not get over the road at all; he has to take chances for that matter."

The foregoing is substantially the evidence bearing upon the point at issue.　Manifestly Spain's testimony presents no conflict with that of the engineer, to the effect that he did not discover that the object on the track was a human being until he was distant 30 feet from it.　And while the sentence in De Garnett's testimony—"I think you could see a man in a couple of hundred feet and tell it was a man that is my best judgment"—if isolated, might seemingly authorize an inference that the engineer should have realized that the object in front of him was a human being when he saw it 150 feet away, yet in our opinion such an inference would be a strained one indeed, considering the quoted sentence in connection with the whole of the witness's testimony, and with the positive testimony of the engineer (plaintiff's own witness) to the effect that he did not realize that the object was a human being until he was only 30 feet from it.　Therefore to say, upon the proof disclosed by the record, that the engineer saw and realized that the object was a human being before he reached the point 30 feet from it, and, consequently, that he had actual knowledge of intestate's peril before that point was reached, would, it seems to the court, be the indulgence of pure conjecture or speculation.

According to the authorities, "the test of responsibility is, did the striking of the intestate, by the engine, occur after the engineer had seen—not might or ought

to have seen—that is, discovered or distinguished, the intestate? Until the intestate had been seen, discerned, to be a human being, the engineer was under no obligation to the trespasser to check or stop his train, whatever might have been his duty to passengers on the train, or to persons rightfully using the track." When the engineer is made aware of the presence and peril of a trespasser, by seeing him, he willfully, wantonly, or intentionally does him hurt at the peril of his employer; but until made aware of the presence, and peril of the trespasser, by seeing him, there could not be willful or wanton misconduct toward him, nor an intentional injury done him, except under certain conditions of place, which have not been shown in this case. Nor could the doctrine known as that of "last chance," have room for application.—*L. & N. R. R. Co. v. Brown*, 121 Ala. 221, 25 South. 609; *Foshee's Case*, 125 Ala. 199, 27 South. 1006; *N., C. & St. L. Ry. v. Harris*, 142 Ala. 249, 37 South. 794, 110 Am. St. Rep. 29; *Johnson v. B. R. L. & P. Co.*, 149 Ala. 529, 43 South. 33; *L., N. O. & T. Ry. v. Williams*, 69 Miss. 631, 12 South. 957; *Tucker v. N. & W. Ry.*, 92 Va. 549, 24 S. E. 229; *L., H. & St. L. R. Co. v. Hathaway*, 121 Ky. 666, 89 S. W. 724, 2 L. R. A. (N. S.) 498.

By the light of the foregoing considerations and authorities, and after due consideration of the entire evidence, the court is at the conclusion that the evidence will not support a reasonable inference of actionable negligence against the defendant or its engineer, nor a reasonable inference that the engineer, willfully, wantonly, or intentionally ran the engine upon the intestate. Consequently the defendant was entitled to the general affirmative charge as requested by it, and the court erred to the prejudice of the defendant in not giv-

ing said charge. This conclusion renders unnecessary the consideration of other assignments of error.

The judgment of the trial court will be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.

The foregoing opinion in this case was prepared by Justice DENSON before his retirement as Associate Justice. Having been adopted in consultation, it is now announced as the opinion of the court.

