[Helms v. Central of Georgia Railway Co.]

# Helms v. Central of Georgia Railway Co.

## Death Action.

(Decided November 7, 1914.   66 South. 470.)

1. *Railroads; Persons on Track; Unlawful Speed.*—Where the recovery was sought on the theory of discovered peril alone, the running of a train which ran down plaintiff's intestate at an unusual rate of speed, furnishes no basis for liability.

2. *Same; Evidence.*—Where it was sought to charge a railroad with negligence on the theory that it wantonly ran its train at an unusual rate of speed, evidence that a large percentage of the travellers use the railroad tracks as a highway, is not admissible for the purpose of showing that the railroad company should have anticipated the presence of persons on the track; there being no showing as to the number of travellers in that vicinity.

3. *Same; Wanton Negligence.*—Where those in charge of a passenger train which ran down a trespasser were not guilty of simple negligence after discovering his position of peril, they could not be guilty of willful negligence after discovery of danger.

4. *Witnesses; Examination; Competency.*—A witness present with the deceased at the time he met his death on the track, who had testified to the circumstances surrounding the accident, was competent to testify that he had detailed to the jury circumstances of the casualty.

5. *Appeal and Error; Harmless Error; Pleading.*—Where the counts which were in, were amply sufficient to present any theory of the case which might be formulated under the evidence, it was harmless error to strike other counts of the complaint.

6. *Same; Evidence.*—Where the verdict was for defendant, no error can be predicated for plaintiff upon rulings on questions of the age of deceased.

7. *Same; Review; Verdict.*—Verdicts rendered on conflicting evidence are conclusive on appeal.

8. *Trial; Argument of Counsel.*—Where the son of deceased had testified to facts showing that the company was free from liability for the death of his father, it was not error for counsel of the company to ask in his argument what the administrator was endeavoring to do, although the intimation was that he was attempting to recover a money judgment against the company; such being the obvious purpose of the administrator.

APPEAL from Houston Circuit Court.   .

Heard before Hon. H. A. PEARCE.

Action by A. E. Helms, as administrator of the estate of E. D. Hobbs, deceased, against the Central of Georgia Railway Company, for damages for the death of his intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

The first count is based on the negligence of the servants or employees operating the train in failing to ring the bell and blow the whistle at a street crossing. The second count was based on the same negligence, with the added duty on the part of the agent or employee to keep a lookout ahead for pedestrians at the time and place plaintiff was killed. The third count sets out that plaintiff's intestate was in full view of defendant's employees operating said train 200 yards before the train reached and struck plaintiff's intestate, and that within that distance the employees in charge of said train could have stopped and should have stopped said train before it struck plaintiff's intestate, but plaintiff's intestate was deaf, the train was running at an unlawful rate of speed, more than 25 miles an hour, and that defendant's employees failed to ring the bell or blow the whistle. The fourth count is the same as the third. The fifth count is based on the same statement of facts as the third, and alleges wantonness or reckless indifference of the employees operating defendant's train. The sixth count is the same as the fifth. Other counts were added by way of amendment alleging the same state of facts, but all based on wantonness or willfulness, or indifference to consequences in running a train in a populous section at a high and dangerous rate of speed without keeping a proper lookout, or without ringing the bell or blowing the whistle. Counts C and B are based on subsequent negligence after discovery of peril, each stating practically the same facts as those set out above.

[Helms v. Central of Georgia Railway Co.]

The first seven assignments of error are based on the sustaining of demurrers to the original complaint, and each count thereof. Defendant filed pleas 2, 3, and 4 to counts A, B, C, D, and E of the complaint. These pleas set up the fact that plaintiff was a trespasser, and by his own negligence in being and remaining upon the track was struck and injured. The pleas further allege that the place of the injury or the place where plaintiff placed himself upon the track was at a point 300 yards west of a public road crossing, and on a curve in the roadbed and track of defendant in a cut; that plaintiff was intoxicated; that the servants and agents of defendant in charge of the train were not aware of the presence of intestate on the track until within 75 yards of where the accident occurred, and they did everything known to the skill of engineers to avoid and prevent the accident; and that the injury would not have occurred if intestate had not placed himself on the track, or if he had left the track before the train struck him, which he had ample opportunity to do. The eighth, ninth, and tenth assignments of error complain of the overruling of demurrer to these pleas. The eleventh assignment is that the court erred in excluding the answer of the witness:

"Well, I cannot say just how fast it was running, but it was running faster than I ever rode on it before."

The twelfth assignment is as to the refusal to permit plaintiff to ask the witness the question calling for the answer set out in the eleventh assignment.

B. G. FARMER, for appellant. The court erred in giving the affirmative charge for defendant as to count A.— *So. Ry. v. Stewart,* 60 South. 927; *B. R. L. & P. Co. v. Jones,* 153 Ala. 167. The court erred in giving the affirmative charge to count B.—*Bir. So. v. Fox,* 167 Ala. 218; *Haley v. K. C. M. & B.,* 113 Ala. 650. The same is

true with reference to count E.—*A. G. S. v. Guest,* 136 Ala. 348. The court erred in not excluding remarks of counsel objected to.—*DuBose v. Connor,* 1 Ala. App. 456; *Ridgell v. State,* 1 Ala. App. 94.

B. F. REID, for appellee. No brief reached the Reporter.

DE GRAFFENRIED, J.—This case, in many ways, is similar to the case of *Blackmon v. Central of Georgia Ry. Co.,* 185 Ala. 635, 64 South. 592. In so far as the facts bearing upon the question of wantonness are concerned, such as the speed of the train, the lookout maintained by the operatives in charge of the locomotive, the ringing of the bell, the blowing of the whistle, the stoppage of the train, and the use by the public of the track at the point of the injury, the questions presented by this record and that by the record in *Blackmon v. Central of Georgia Ry. Co., supra,* are for all practical purposes entirely similar. In *Blackmon v. Central of Georgia Ry. Co., supra,* this court twice declared that, under the facts, the defendant, Central of Georgia Railway Company, was entitled, as to the wanton counts in the complaint, to affirmative instructions in its favor.

The trial court, in the instant case, was of the opinion that, under the evidence, the defendant was, in so far as the wanton counts in the complaint were concerned, entitled to affirmative instructions and gave such instructions to the jury in its behalf. Upon the authority of *Blackmon v. Central of Georgia Ry. Co., supra,* the trial court was free from error in treating this case as one involving only the question of liability growing out of the doctrine of subsequent negligence. This being true, we must treat this case, in so far as the other questions presented by the record are concerned, as if it had been

originally instituted upon the sole theory that the claimed liability of the defendant arose out of an alleged actionable act of subsequent negligence on the part of the defendant, its agents or servants.

1. It follows, therefore, that it does not matter whether, on the named occasion, the train was, when the plaintiff's intestate was first discovered on the track, running at a greater rate of speed than its usual speed or not. The question in this case, on the subsequent negligence counts, was, not what the locomotive was doing before or when the plaintiff's intestate was discovered on the track, but what those in charge of the train did after the discovery of the peril of the plaintiff's intestate.

2. The counts left in the complaint, which charged wantonness, were amply sufficient to meet the plaintiff's right of recovery, if, under his facts, the question of wantonness had been one for the jury. Under no theory of the case was the plaintiff entitled to recover for an act of initial negligence on the part of the defendant, its servants or agents. The trial court held that the plaintiff had a case for the jury on the question of subsequent negligence, and the counts in the complaint for subsequent negligence, upon which the case was tried, were amply sufficient for all of the exigencies of the plaintiff's case. The appellant can take nothing, therefore, from his first twelve assignments of error.—*Whaley v. Sloss-Sheffield Steel & Iron Co.*, 164 Ala. 216, 51 South. 419, 20 Ann. Cas. 822; 2 R. C. L. p. 244, § 203.

3. The trial court committed no error in refusing to permit the witness Helms to testify that in his judgment 50 per cent of the pedestrians who came into Dothan by a certain public road quit the road at the railroad crossing and walked into town along the roadbed of the defendant. This evidence was offered in the effort of the

plaintiff to bring his case within the influence of the doctrine on the subject of wantonness, laid down in *Southern Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927, and which was cited and quoted from in *Blackmon v. Central of Georgia Ry. Co., supra.* On this subject it might have been competent for the witness to give his best recollection—if he knew enough of the situation to testify to it —as to the number of people who were daily accustomed to use the track of the roadbed, at the named point, for longitudinal travel; but the fact that 50 per cent of the pedestrians who used this particular public road were accustomed to quit the public road and go upon the track of the railroad does not indicate how many people used the track. It may be that only a few people were accustomed to use this public road for foot travel. The appellant is entitled to take nothing because of his thirteenth, fourteenth, and fifteenth assignmens of error.

4. A winess, Ed Hobbs, a son of the deceased, was with his father at the time of his death. This witness testified on behalf of the defendant, and he gave—if he told the truth and was sober enough at the time his father was killed to remember what occurred—the circumstances which led up to and resulted in his father's death. He gave, in detail, the various circumstances which formed a part of the res gestae of the occurrence, and about the time he had finished his account of the matter the defendant's counsel asked him if he had detailed to the jury the circumstances of the transaction." The court, over the objection of the plaintiff, allowed the witness to answer, "Yes, sir." We take it that by this question the defendant simply sought to have the witness state to the jury that he had, in his testimony, told them all that he remembered about the matter, and we can see no reason why the witness was not competent to so testify. The answer of the witnes was simply a state-

ment that he had given to the jury all of his knowledge on the subject.

5. The jury returned a verdict for the defendant. It mattered not, therefore, to the plaintiff, in so far as this case is concerned, how old the deceased was at the time he was killed.

6. The record in this case shows that on the only issue in this case which was properly before the jury, viz., the subsequent negligence vel non of the servants of the defendant who had charge of the locomotive, the trial judge committed no error in any of the charges which he gave to the jury. This is admitted by counsel for appellant. In fact, the record shows that the case, on this particular issue, was fully and fairly submitted, in all of its phases, to the jury, and that it went to the jury, on this issue, in as favorable a way, under charges given by the court at the request both of the plaintiff and of the defendant, as the plaintiff could reasonably have asked or anticipated. This court is therefore not in a position to help the plaintiff on this issue which a jury, after considering the conflicting evidence, decided in favor of the defendant.

7. Judgments have been frequently reversd on account of improper remarks of counsel, pending a trial, which probably prejudiced the case of the appellant before the jury. Counsel, however, are permitted a wide range in argument, and in supervising their arguments much latitude has always been allowed trial judges. In this case a son of the plaintiff's intestate had testified to facts, which, if true, showed that the defendant was not liable for the death of his father. This son, it is true, was impeached, and there was evidence tending to show that when his father was killed he was so drunk as to probably not be able to give a correct account of the matter. His testimony was before the jury, however, and the jury

may have believed it. Appellee's counsel had a right to argue to the jury that the testimony of the son was true. During his argument counsel for appellee made the following remark—the basis of the assignment of error now under consideration: "What is the administrator here for? What is he doing in this suit? What is he here for? I ask you this, gentlemen of the jury."

It was, of course, patent to every person that the plaintiff in this suit was endeavoring to get a moneyed judgment against the defendant, and it may be that the counsel for appellee, after reviewing the testimony and after referring to the testimony of the son of the deceased, made the above remarks. It may be that he intended, as stated by counsel for appellant, to "convey to the jury that the plaintiff, as administrator, was prosecuting this suit for the purpose of getting money out of the defendant." That, as already said, was the plain purpose of the suit, and we see no reason why counsel had not the right to make the statement even if, in making it, he intended to submit to the jury the argument that there was no evidence in the case sufficient to justify the administrator's right of recovery. When a fact is in evidence—when a truth is plain—we see no reason why counsel may not, in argument, refer to it.—2R. C. L. p. 242, § 20.

8. In the instant case there was evidence that the deceased and two companions—one of them his son—used the point at which the deceased was killed as a convenient place at which to get drunk, and that they were thus drunk when the deceased was killed. The argument and the evidence in this case, with reference to wantonness, are substantially the same as they were in *Blackmon's Case, supra,* and our conclusion is the same on that subject as it was in *Blackmon's Case, supra.* The man whose death was the subject of inquiry in *Blackmon's*

*Case, supra,* and the man whose death is the subject of inquiry in the present case, were, when they were killed, trespassers upon the tracks of railroads, and they were not killed under circumstances indicating wantonness on the part of those who controlled the locomotive which killed them. In this case a jury, upon consideration of all the evidence, has determined that after the discovery of the intestate's peril the servants of the defendant committed no act of simple negligence which proximately caused the intestate's death. This being true, there could not, under the law, have been after the discovery by them of plaintiff's intestate's peril such an act of willful neglect on the part of the defendant's servants as amounted to wantonness. The judgment of the trial court is therefore affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur.