# Sims *v.* Alabama Great Southern R. R. Co.

### Death Action.

### (Decided June 15, 1916.   72 South. 328.)

1. **Railroads; Crossing Accident; Evidence.**—Under the evidence in this case, it is held that the crossing at which the accident occurred was not a public crossing, as only employees of and those having business at a compress were accustomed to cross the tracks at that place.

2. **Same; Contributory Negligence.**—A person stepping from a path between two tracks immediately in front of an approaching engine, is guilty of contributory negligence barring recovery.

3. **Same; Evidence; Instruction.**—Where there was evidence tending to show that deceased was walking down the path near the approaching engine, a charge that the exercise on the part of the engineer of the presumption that a human being will avoid any injury is not the taking of a chance in such a sense as to render defendant liable until the engineer discovers something in the conduct of deceased that will induce a reasonable man situated as the engineer was to reasonably believe that said person would not of himself avoid the injury, cannot be said to be argumentative or misleading.

4. **Same.**—Where it did not appear that decedent indicated that he was going to step in front of the approaching engine, a charge that if plaintiff's intestate stepped from a place of safety in front of an approaching engine, and so closely thereto that the engineer could not by the use of all the means known to skillful engineers, have avoided the injury, then plaintiff could not recover, was proper.

5. **Same.**—A charge that where one walks on the tracks or right of way of a railroad, without invitation or license, he is a trespasser and assumes the peril of the position in which he has voluntarily placed himself, and the railroad owes him no duty except the exercise of reasonable care and diligence to avoid injuring him as soon as his peril becomes apparent, although misleading in not requiring the engineer to use all means in his power to avoid the injury, is not reversible error where no explanatory instruction was asked.

APPEAL from Etowah Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Action under the Homicide Act (Code 1907, § 2486), by Mattie V. Sims, as administratrix, for damages for the death of her intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

The pleadings and the facts sufficiently appear. The following charges were given for defendant:

C. The court charges the jury that the exercise on the part of the engineer of the presumption that a human being will extricate himself from a position of peril or will avoid injury is not the taking of the chance in such a sense as to render the defendant liable until the engineer discovers something in the appearance or conduct of plaintiff's intestate which would indicate to a reasonable man, situated as the engineer was, that said intestate would not of himself avoid the injury.

D. The court charges the jury that, if plaintiff's intestate stepped from a place of safety in front of an approaching engine and so close thereto that the engineer could not by the use of all means known to skillful engineers have avoided the injury, then plaintiff cannot recover.

E. Unless you are reasonably satisfied from the evidenc that either Engineer Wilson or Fireman Ledford was guilty of reckless indifference to the life and safety of others, or was guilty of some negligence after discovery of the peril of plaintiff's intestate which resulted in the death of plaintiff's intestate, you should find a verdict for defendant.

H. The court charges the jury that where one walks on the track or right of way of a railroad, without invitation or license, he is a trespasser and assumes the peril of the position in which he has voluntarily placed himself, and the railroad owes him no duty except the exercise of reasonable care and diligence to avoid injuring him as soon as his peril becomes apparent.

RIDDLE, BURT & RIDDLE, and MCCORD & DAVIS, for appellant. GOODHUE & BRINDLEY, for appellee.

GARDNER, J.—This action is brought under the homicide act by the administratrix of the estate of W. C. Sims to recover damages for the death of her intestate, who was killed by being run over by one of defendant's switch engines while on or crossing the track at Attalla, Ala.

The first count relied for recovery upon simple negligence, alleging that the plaintiff's intestate was killed while crossing the track of defendant's railway at a "public crossing." The second count is for subsequent negligence, and the third is for wanton, willful, or intentional injury. To the first count of the complaint special pleas of contributory negligence were interposed, and plaintiff's demurrers thereto were by the court overruled. These rulings constitute the first assignment of error.

The plaintiff's intestate was killed on the morning of December 31, 1913, between the hours of 9 and 10 o'clock, and at a point between the compress and the depot of the defendant railroad. Between these two points were a number of tracks—five or six—and the engine which struck the intestate was engaged in switching cars. Near the compress there was a track for the convenience of that business, called the compress track. This track and the transfer track, on which intestate was killed, were not laid parallel but approached each other triangularly as they neared the depot. Plaintiff's intestate on that morning descended the steps from the compress platform and walked down between the tracks toward the depot. The great weight of the evidence is to the effect that intestate stepped upon the transfer track immediaely ahead of the switch engine, a witness for plaintiff testifying that "Sims got on the track in front of the engine. * * * Didn't step on the track, but stepped over the first rail, and just as he raised his foot, * * * when he stepped over, the engine was not over three or four feet back from him. * * * He did not have time to put the other foot down until it struck him."

Another witness for plaintiff (witness Hinds) testified that; when intestate "came on the transfer track, he walked up it a piece, maybe 30 or 40 feet," and "he was walking right down the transfer tracks at the place when he was hit." The distance between the compress and transfer tracks at the place where the intestate was killed is estimated to be about twelve feet.

(1) There is proof to the effect that some of the employees of the compress crossed the defendant's railroad track; that cotton buyers also have been going to the compress across these tracks; that there are paths worn along between the tracks; and that this has been done "since 1912." One of the witnesses for plaintiff stated that the compress worked between 20 and 30 men during the busy part of the season, and that people going to and from

the compress and depot went that way. There is nothing in the evidence to indicate at what hours of the day these tracks were so crossed, but it tends to show that only employees and those having business at the compress were accustomed to walk along or cross over them.

We need not further discuss the evidence in this connection. Suffice it to say, it has been carefully considered in consultation, and we are persuaded that the evidence in this record falls far short of bringing this case within the requirements of the rule laid down in what may be called "popular crossing" cases. It is not pretended that the place in question was a street—or road—crossing, but merely that it was a "public crossing," so established by continuous and frequent use by the public. We think it is clear that plaintiff's intestate was not killed at a "public crossing." *So. Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927; *Blackmon v. Cen. Ga. Ry.,* 185 Ala. 635, 64 South. 592; *So. Ry. Co. v. Drake,* 166 Ala. 540, 51 South. 996; *B'ham So. Ry. Co. v. Fox,* 167 Ala. 281, 52 South. 889; *Savannah, etc., R. R. v. Meadors,* 95 Ala. 137, 10 South. 141; *Helms v. Cen. Ga. Ry.,* 188 Ala. 393, 66 South. 470.

The first count of the complaint relied specifically upon the public-crossing theory. The affirmative charge was therefore properly given for the defendant on that count. As the pleas, demurrers to which were overruled, were addressed only to the first count of the complaint, the ruling thereon, in view of what we have here said, is unnecessary to be considered.

(2) Upon the conclusion we have reached it will be seen, as above indicated, that defendant's agents or servants owed the intestate no duty of lookout. It is clear, on the theory that plaintiff's intestate stepped from the path between the two tracks onto the transfer track immediately in front of the approaching engine, and he was guilty of contributory negligence in failing to stop, look, and listen before going on the track, or in going on it with full knowledge of the situation and thus taking his chances. —*L. & N. R. R. Co. v. Morgan,* 190 Ala. 108, 66 South. 799; *Gen. Ga. Ry. v. Foshee,* 125 Ala. 199, 27 South. 1006.

This leaves for consideration only the questions of subsequent negligence and wanton or willful injury as charged in counts 2 and 3. The trial court permitted the case to go to the jury upon these counts and charged the jury at length as to each. To these oral charges plaintiff's counsel reserved no exceptions, but, on the

contrary, as the record disclosed, stated at the conclusion of the charge their satisfaction therewith, and this notwithstanding the oral charge confined the jury to counts 2 and 3. Counsel for plaintiff on this appeal inform us, however, that they were not of counsel in the trial of the case in the court below.

There was evidence tending to show that the engineer was in his place, with his head out the window, looking ahead, and that the track was but slightly curved. We have previously noted the testimony of the witness Hinds, showing that intestate was walking down the track at the time he was struck. There was also some evidence that the bell was not rung nor the whistle blown, and that there was noise from a passenger train standing nearby. The engineer insisted that he did not see deceased at all, although he was looking ahead. The fireman testified that he was firing the engine at the time the accident occurred. The proof shows without conflict that the engine was not running over five miles an hour; some of the witnesses estimating the speed as low as three miles.

(3) Some of the assignments of error are predicated upon the giving of certain charges in writing for the defendant. It was not reversible error to give charge C on defendant's request. If it was merely argumentative or misleading, these faults would not suffice to constitute the giving of the charge reversible error. It rested upon the theory that the engineer, upon seeing an adult person on the track, has a right to assume that he will leave it before the car reaches him, and that this presumption may be indulged so long as the danger does not become imminent. According to the testimony of the witness Hinds, plaintiff's intestate was walking down the track, and the engine was running at a rate of speed not exceeding five miles an hour (So. Ry. Co. v. Shirley, 189 Ala. 568, 66 South. 511), and at a place where intestate could easily have left the track. It is suggested that the charge is subject to criticism for the use of the language, "would indicate to a reasonable man situated as the engineer was," for the reason that an engineer is required to exercise the highest degree of care, etc. The charge was not dealing with the degree of care to be exercised by an engineer, however, but only with the question when an engineer is called upon to exercise that high degree of care.

(4) Under the light of the evidence in the case, we do not think the giving of this charge was reversible error. Nor was

there error in the giving of charge D on the defendant's request. There is nothing in the evidence tending to show that the plaintiff's intestate gave any indication that he was going to suddenly step from a place of safety immediately in front of the approaching engine. We have previously indicated that there is nothing tending to show any initial negligence on the part of the engineer.

Charge E is criticised for that it pretermits the negligence of the engineer or fireman in not ringing the bell or blowing the whistle; but the argument assumes that the defendant's servants or agents owed to plaintiff's intestate the duty of lookout, which we conclude from this record was not the case.

(5) Charge H was requested by the defendant in view of the evidence of the witness Hinds, to the effect that plaintiff's intestate was walking down the track. This charge may be subject to some criticism for the use of the words "reasonable care and diligence;" but this, we conclude, renders the charge misleading only. While the language used is in accord with expressions found in some of our cases (*Haley v. K. C., M. & B. R. R.*, 113 Ala. 649, 21 South. 357; *A. G. S. R. R. v. Guest*, 136 Ala. 352, 34 South. 968; *Cen. R. R. & Bkg. Co. v. Vaughan*, 93 Ala. 209, 9 South. 468, 30 Am. St. Rep. 50) yet the true rule requires the engineer to do all in his power, to use all appliances at hand known to prudent and skillful engineers, to avert the injury after discovering the peril.

Of course, by "reasonable care and diligence" is meant such as is required in view of all the circumstances. A similar charge was held to be misleading in *Cen. Ga. Ry. v. Stewart*, 178 Ala. 651, 59 South. 507. If the plaintiff was of the opinion that the jury might be misled by this charge, in regard to the degree of diligence incumbent on the engineer, an explanatory charge should have been requested. We are unwilling to predicate a reversal upon the giving of this charge, particularly in view of the very full charge of the court, with which plaintiff's counsel at that time expressed satisfaction.

We do not consider the assignments relating to the question whether the evidence called for would be the statement of a collective fact, or would be objectionable as a conclusion of the witness, of sufficient importance for detailed treatment here. Suffice it to say, they clearly do not present matters upon which a reversal of the case could be predicated.

[Foshee, et al. v. Kay, et al.]

Upon a careful consideration of the record, we find no error calling for reversal of the cause, and the judgment is, accordingly, affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.