18 So.2d 547

**CALLAWAY v. GRIFFIN.**

**4 Div. 289.**

Supreme Court of Alabama.

June 15, 1944.

A. M. McDowell and McDowell & Mc-Dowell, all of Eufaula, for appellant.

Archie I. Grubb, of Eufaula, and Lee J. Clayton, Sr., of Clayton, for appellee.

THOMAS, Justice.

The suit was under the homicide statute. There were three counts as framed charging subsequent negligence, and a willful and wanton count. When the evidence was in defendant requested the general affirmative charge as to each count, which was refused. This ruling of the court is assigned as error.

Each of the four counts of the complaint upon which defendant's alleged liability is predicated proceed upon the theory and aver that the servants, agents or employees of the defendant committed the wrongful act complained of after the danger to plaintiff's intestate was discovered, knowing the situation of peril of the deceased, or after becoming aware of deceased's peril, failed to use due caution to prevent injury, or that they wantonly or willfully ran over or upon him, which caused his death. The first three counts of the complaint charge subsequent negligence, while the fourth charges wanton and willful misconduct.

The allegations attempting to show liability of the defendant for subsequent negligence, place upon the plaintiff the burden of proving that the employees of the defendant operating the train which caused decedent's death actually knew that the deceased was present upon the track in peril and within such time as to render the failure to stop the train before injuring or causing his death as an act of negligence. To maintain the charge of wanton or willful negligence, or intentional wrong as charged in the complaint, the burden of proof is upon the plaintiff to show that the engineer operating defendant's train was at the time in fact acquainted with the conditions out of which the duty arose to avoid intestate's peril. As to this count, no mere evidential presumption can equal in this respect that conscious knowledge which is an essential element of wanton or intentional wrong. It is averred that:

"* * * plaintiff's intestate, Jeff Griffin, was within the corporate limits of the City of Eufaula, Alabama, in a place of danger *upon or near to the track* where defendant was operating said locomotive and train of cars, * * * that, *after the danger to her intestate was discovered by defendant's engineer or other person* who was then and there in charge or control of said locomotive, as aforesaid, while act-ing within the line and scope of his employment as such engineer, or other servant or agent, wrongfully wantonly, willfully, or *intentionally ran said locomotive and cars over, upon or against plaintiff's intestate* at the time and place aforesaid, and thereby killed him; * * *." [Italics supplied.]

We should observe that the burden of proof assumed by the pleader adverted to and embraced in the evidence shows plaintiff's intestate was without dispute a trespasser upon defendant's railway track. He was seen in the late afternoon preceding his death under the influence of liquor, and at the time having a quart bottle about half full in his possession; that the last time he was seen alive was by his brother on the same afternoon between five and five-thirty o'clock on defendant's railroad track back of the city cemetery. His crushed and mangled body was found prone between the rails of the track at an isolated spot between 8 and 9 o'clock, Central War time, on the night of July 24th, 1942, at a point between the trestle which spans Chewalla Creek and the "cemetery brick wall," within the city limits. There were no eye witnesses to the accident which caused his death.

Appellant insists that defendant failed to meet the burden of proof and hence the several general affirmative charges were requested as to each count. Before considering the rulings of the trial court in refusing these charges, we will advert to the rulings on evidence to which exceptions were reserved.

It is first insisted by the appellant that the lower court erred in admitting in evidence the Code of the City of Eufaula, particularly Section 527 thereof, the ordinance prohibiting the rate of speed of trains in excess of eight miles per hour within the city limits. That such was error is manifest when it is seen that the complaint, as well as the testimony presented by the plaintiff, attempts to predicate the defendant's liability upon subsequent negligence in that the employees of defendant failed to stop the train after becoming aware of deceased's peril. Although in an action for simple negligence the violation of a city ordinance is relevant; obviously, in a case of subsequent negligence, involving circumstances such as this case on appeal, such violation could not be the proximate cause of the injury and death of

plaintiff's intestate, nor in any other way constitute material or competent evidence.

Neither count charges negligence in the operation of the train, at the time and place, at an unlawful rate of speed, but charges subsequent negligence, and willful and wanton misconduct after discovery of peril. Therefore, even though the ordinance has the force of law, the violation thereof is classified as simple negligence and not admissible in evidence under the allegations of the complaint. Roberts v. L. & N. Ry. Co., 237 Ala. 267, 186 So. 457. That is, if the accident occurred within the corporate limits of the City of Eufaula, but at an isolated place, the violation of an ordinance regulating speed of trains would not show subsequent negligence, but initial or antecedent negligence. Central of Georgia Ry. Co. v. Blackmon, 169 Ala. 304, 53 So. 805.

■ It has been declared by this court to operate a train within the corporate limits of a city at a speed prohibited by its ordinance, *without more*, will not constitute a wanton or intentional wrong, rendering a defendant liable for the death of a trespasser. Martin v. Union Springs & N. Ry. Co., 163 Ala. 215, 50 So. 897; Helms v. Central of Ga. Ry. Co., 188 Ala. 393, 66 So. 470; Roberts v. L. & N. Ry. Co., 237 Ala. 267, 186 So. 457. Otherwise stated, the mere violation of a statutory duty, amounting to simple negligence only, will not constitute willful and wanton misconduct unless there be actual knowledge, "or that which is esteemed in law as the equivalent of actual knowledge, of the peril of the person injured, coupled with the conscious failure to act, to the end of averting the injury." Smith v. Central of Georgia Ry. Co., 165 Ala. 407, 51 So. 792, 793. The rate of speed alone does not constitute willful or wanton negligence. Northern Ala. R. Co. v. McGough, 209 Ala. 435, 96 So. 569. There must exist the other necessary elements of such culpable act or the failure to act, in such circumstances of time, place and knowledge on the part of defendant of the peril that imposed the duty to act or refrain from acting to cause the injury.

In Martin v. Union Springs & N. Ry. Co., supra, this court held that the mere violation of a city ordinance would not constitute such conduct as to impose liability for the death of a trespasser. And in Helms v. Central of Ga. Ry. Co., 188 Ala. 393, 66 So. 470, it is declared that where

recovery was sought on the theory of discovered peril alone, the running of a train at a speed greater than allowed by city ordinance, furnished no basis for liability even if running at an unusual rate of speed. See also Roberts v. Louisville & Nashville R. Co., 237 Ala. 267, 186 So. 457; Weatherly v. Nashville C. & St. L. Ry. Co., 166 Ala. 575, 51 So. 959.

■ The testimony of plaintiff's witnesses and that of Griffin, Morrell and Walker was to the effect that numerous people for the two years next before the death of plaintiff's intestate had used the railroad track, where the injury occurred, as a travel-way for pedestrians from Hoboken to Eufaula, but such testimony does not raise a conflict that would prevent the giving of the affirmative instruction requested. However, the engineer in charge and the superintendent of tracks testified, without dispute, that a constant lookout was maintained at the time and place and *that no human being was observed on the track as a pedestrian or otherwise.*

In Central of Georgia Ry. Co. v. Blackmon, 169 Ala. 304, 53 So. 805, 807, the rule is laid down by this court that while plaintiff's intestate's negligence in being on the track would defeat a recovery for initial or antecedent negligence, yet he could recover, "if defendant's servants, in charge of the train, became aware of the intestate's peril in time to avoid running over him by the proper use of preventative means at their command, and negligently failed to resort to such means, to conserve his safety, provided the intestate himself was free from negligence after becoming conscious of his danger." It is without dispute that plaintiff's intestate at the time of his injury was drinking or intoxicated and lying or sitting on the track, and he was not using the track as a passage way. As such trespasser he did not come within the rule of cases defining the duty of a railroad to one using its track as a recognized travel-way that might affect liability in the premises. Southern Ry. Co. v. Stewart, 179 Ala. 304, 311, 60 So. 927, has been adhered to in our later cases of Clark v. Birmingham Electric Co., 236 Ala. 108, 109, 181 So. 294; Louisville & Nashville R. Co. v. Sullivan, 244 Ala. 485, 13 So.2d 877. See also Birmingham Ry. L. & P. Co. v. Jones, 153 Ala. 157, 45 So. 177 (child on the track); Smith v. Central of Georgia Ry. Co., 165 Ala. 407, 51 So. 792 (where engineer thought object was a buzzard); Louisville

& Nashville R. R. Co. v. Rayburn, 198 Ala. 191, 73 So. 461 (the drunk man was recognized).

■ The evidence discloses without dispute that plaintiff's intestate was a trespasser at the time and place of his injury and that defendant owed him no duty except to exercise reasonable care to avoid injuring him after discovery of his peril as a human being, and this duty arose at the moment the peril of his position became known to the engineer in charge of the train and not before. *Southern Ry. Co. v. Bush,* 122 Ala. 470, 483, 26 So. 168; *Central of Ga. Ry. Co. v. Blackmon, supra;* *North Alabama Ry. Co. v. Henson,* 210 Ala. 356, 98 So. 18; *L. & N. Ry. Co. v. Rogers,* 242 Ala. 448, 6 So.2d 874; *Southern Ry. Co. v. Drake,* 166 Ala. 540, 548, 51 So. 996.

■ It may be further observed that all of our cases are to the effect that an essential of guilt of subsequent negligence means not imputed knowledge, but that, as stated in *Louisville & N. R. Co. v. Griffin,* 240 Ala. 213, 198 So. 345, "In order to predicate liability upon railroad for 'subsequent negligence' railroad must be shown to have had actual knowledge of plaintiff in a perilous position and thereafter negligently fail to use all means at its command and known to skillful engineers so circumstanced to avert injury to the plaintiff when to have promptly and duly used such means could have averted the accident." See also *Young v. Woodward Iron Co.,* 216 Ala. 330, 113 So. 223.

In *Central of Georgia Ry. Co. v. Bates,* 225 Ala. 519, 144 So. 9, 10, it is declared that, "The rule as to negligence, after discovery of peril, has been fully stated by this court; it is predicated on actual knowledge of peril, and failure to take due and available preventive action. * * *"

Defendant's engineer, operating the train on the fatal night of July 24, 1942, stated that he passed the trestle running toward Eufaula at the rate of 35 miles per hour. He had been on the said run from Montgomery to Eufaula for a little more than four years, was familiar with the railroad at the point, and testified (the map in evidence confirming his testimony), that: "When you come over the trestle there is a reverse curve that prevented me as engineer from seeing far down the track (as he approached) in the day time." That he had a forty foot boiler ahead of him and by reason of the indicated terrain and his boiler, and the time of day, he could have only seen about 150 feet from the trestle. He further testified, and is not contradicted by any witness, that he was maintaining a continuous look-out "down the track" on the other side of the trestle until he got to where the cemetery brick wall was located. That at such time and place he did not see a person on the track between Hoboken and Eufaula, "not that I knew of." That he saw an object on the track which he thought was a piece of waste paper or a sack, and could not tell "whether or not it was a man." That from the point where he first saw the waste paper or sack his engine was 100 feet back of it. He further said that his vision as to this object was "just a flash" and he did not recognize that it was a "human being at all." That he did not make any report of this when he arrived at the depot in Eufaula and went on the regular run into Georgia, and learned the next day that the train had killed a man on the track at the point where he noticed what he thought was a "piece of waste paper or sack."

Plaintiff's supervisor of tracks, Mr. Reaves, was riding with the engineer on the occasion of this accident and was seated on the fireman's side of the train on the left of the engineer. When they crossed the trestle, while the fireman was engaged in the discharge of his duty firing the engine, witness was sitting on the fireman's box, looking ahead along the track; that witness had nothing to do with operating the train that night, yet he was keeping a lookout along the track from the trestle to the cemetery brick wall, and didn't see anything on the track. He testified, "I saw no object of any kind."

■ The general rule of liability under stated facts is set out in Montgomery Light & Traction Co. v. Baker, 190 Ala. 144, 67 So. 269, 272, as follows:

"* * * A man who is drunk or in any way disabled, on a street car track, is entitled to a recovery for damages inflicted upon him by a street car if the motorman saw him on the track in time to prevent the injury, and then negligently failed to use the precautions which a reasonably prudent man skilled as a motorman would have been expected to use to prevent the injury. * * *"

The many authorities from this jurisdiction on the question are collected in 45 Corpus Juris, pp. 1098, 1099, and well

state the rule as to willful and wanton injury.

We have indicated that the several counts (construed against the pleader) show that plaintiff's intestate was a mere trespasser sitting or lying on the track when injured. Louisville & N. R. Co. v. Rogers, 242 Ala. 448, 6 So.2d 874. And there are many decisions from this court touching the charge of willful and wanton injury. These decisions were discussed by Mr. Justice Somerville in Southern Ry. Co. v. Stewart, 179 Ala. 304, 60 So. 927, 928, and he simplifies the conflicting statements of our cases where plaintiff's intestate was killed while lying between the rails of a railroad track, as follows:

"* * * This apparent misconception of the language of the Lee Case [92 Ala. 262, 9 So. 230] as being applicable to trespassers walking along the track or right of way has been consistently perpetuated in the later decisions of the court; and the doctrines above quoted from the Womack and Glass Cases [M. & C. R. R. Co. v. Womack, 84 Ala. 149, 4 So. 618; Glass v. M. & C. R. R. Co., 94 Ala. 581, 10 So. 215] must now be regarded as qualified by these decisions. Haley v. Kansas City, etc., R. R. Co., 113 Ala. 640, 21 So. 357; A. G. S. R. R. Co. v. Guest, 136 Ala. 348, 34 So. 968; s. c., 144 Ala. 373, 39 So. 654; Northern Ala. Ry. Co. v. Counts, 166 Ala. 550, 51 So. 938; Birmingham Southern Ry. Co. v. Fox, 167 Ala. 281, 52 So. 889; B. R. L. & P. Co. v. Jones, 153 Ala. 157, 45 So. 177. * * *" [Brackets supplied].

Under the facts of the Stewart case and the case at bar, Mr. Justice Somerville's following observation is controlling:

"* * * It is therefore perfectly clear on the undisputed evidence that whether or not defendant's servants were bound to anticipate the presence of pedestrians walking on the track at that point, and hence under the duty of discovering their presence and avoiding doing them injury, they were not bound to anticipate the presence of intestate lying prone between the rails, and were, therefore, under no duty to look out for and discover such presence, and under no duty to avoid injuring him, in the absence of actual and timely knowledge of his presence in that place of danger. In other words, plaintiff's right of recovery must be tested, not by the duty owed to the general public under the conditions named in the complaint, but only by the duty owed to her intestate under the wholly different conditions shown by the evidence. * * *"

The true rule stated in the Stewart case and in the Drake case (Southern Ry. Co. v. Drake, 166 Ala. 540, 51 So. 996) has been followed in the recent decisions by this court. Clark v. Birmingham Electric Co., 236 Ala. 108, 181 So. 294; Louisville & N. R. Co. v. Sullivan, 244 Ala. 485, 13 So. 2d 877.

The subject was given examination by Mr. Justice Somerville in Northern Alabama Ry. Co. v. Henson, 210 Ala. 356, 98 So. 18, 19, where he observed:

"In So. Ry. Co. v. Drake, 166 Ala. 540, 548, 51 So. 996, the plaintiff's intestate was lying with his head over a rail, and his body on the outside. One of the plaintiff's witnesses testified that with an electric headlight he thought an engineer could see a man, and tell it was a man, in 200 feet of him. The engineer testified that he saw an object about 150 feet away, but could not tell, and did not realize that it was a man until within about 30 feet of him.

"In holding that upon this evidence the trial judge should have given the general affirmative charge for the defendant, this court, speaking through Mr. Justice Denson, said:

"'Therefore to say, upon the proof disclosed by the record, that the engineer saw and realized that the object was a human being before he reached the point 30 feet from it, and consequently, that he had actual knowledge of intestate's peril before that point was reached, would, it seems to the court, be the indulgence of pure conjecture or speculation.'

"* * * Our conclusion is that the evidence does not support a finding for plaintiff under either the second or third count of the complaint, and that the trial judge erroneously refused to give for defendant the general affirmative charge as duly requested in writing."

The two counts involved in that case were subsequent negligence and wilful and wanton counts.

The testimony of George Walker, tending to impeach the testimony of defendant's supervisor of tracks, who was on the engine at the time of the accident, did not go to the question of liability as charged in the several counts and did not bring

about a conflict in the testimony which would prevent the giving of the affirmative instruction requested by the defendant. 1st Greenleaf on Evidence, page 460(b); Nashville, Chattanooga & St. Louis Railway Co. v. Harris, 142 Ala. 249, 252, 37 So. 794, 110 Am.St.Rep. 29 (where the conductor thought the object on the tracks was a goat). After all that may be said of the opinion evidence as to recognizing a human being on the tracks from a point at the trestle if lying between the rails at the time and place and under the subsequent test made in the daytime, it is undisputed that the two defendant's agents in charge of the engine and on the lookout at the time and place did not see a human being on the tracks in peril. The case of Southern Railway Co. v. Stewart, supra, is conclusive on the authorities cited from this and other jurisdictions. In the case of Birmingham Railway, Light & Power Company v. Fuqua, 174 Ala. 631, 56 So. 578, the point of injury was a public crossing and involved a different rule. So, also, in Georgia Pacific R. Co. v. Lee, 92 Ala. 262, 271, 9 So. 230.

The general affirmative charges requested by the defendant should have been given, and the refusal of such charges was error to reverse.

The judgment of the Circuit Court is therefore reversed, and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and FOSTER and STAKELY, JJ., concur.