[Southern Railway Co. v. Gullatt.]

# Southern Ry. Co. *r.* Gullatt.

*Damages for Death of Person on Track*

(Decided an. 18, 1909.   48 South. 472.)

1. *Railroads; Injury to Persons on Track; Proof.*—Where the action is for injury for the negligent failure of the trainmen to stop the train after seeing a person on the track, it is essential to prove knowledge of the person's peril, on the part of the trainmen.

2. *Same; Jury Question.*—Whether or not the company's employes saw the peril of intestate on the track in time to have stopped the train, is under the evidence in this case, a question for the jury .

3. *Appeal and Error; Harmless Error.*—It was not prejudicial to the defendant to permit testimony of the intestate's residence before his death, nor as to how long intestate had resided at that place, where the action was for intestate's death by being struck by defendant's train.

4. *Same; Objections Below; Scope.*—The question whether the hypothetical question included facts not in evidence, is not raised on appeal by objections based on the grounds of illegality and immateriality.

5. *Evidence; Expert Evidence; Competency.*—One who has had twenty years experience in railroading and had served two years as fireman and three years as freight engineer, and had often observed passenger trains being stopped, was competent to state as an expert within what distance a passenger train could be stopped, although he had never run a passenger train; the engines being similar in type, even though the cars composing the two trains are different.

6. *Same; Weight and Sufficiency; Inferences.*—Such inferences as the jury believed to be fair and reasonable and consistent with the other evidence may be drawn by juries from facts proven to their reasonable satisfaction.

7. *Railroads; Injury on Track; Evidence.*—It having no tendency to prove that fact, and evidence thereof being otherwise obtainable, it was not competent to prove the number of coaches in the train that struck intestate, by evidence of the number of coaches in the daily train of the same number and schedule as that which struck intestate.

8. *Same; Discovered Peril; Liability.*—A railroad company would be liable if a person was lying on the railroad track in a position of peril and those in charge of the train saw his peril in time to stop and failed to use due care to do so, and thereafter negligently ran over him.

9. *Trial; Instructions; Applicability to Evidence.*—A charge asserting that no inference prejudicial to defendant could be drawn from the failure of the engineer to testify, is abstract, where no in-

[Southern Railway Co. v. Gullatt.]

structions are requested by the other side as to the effect of his failure to testify, and no reference was made in argument as to any presumptions arising therefrom.

10. *Same; Argumentative Instructions.*—Argumentative instructions are always properly refused.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by Samuel Gullatt, as administrator, against the Southern Railway Company. From a judgment for plaintiff, defendant appealed. Reversed and remanded.

The following charges were refused to the defendant: (1) and (2) Affirmative charges as to the second count. "(3) No inference can be drawn prejudicial to the defense in this case by reason of the fact that the engineer was not introduced and examined as a witness in the cause by the defendant. (4) The jury would not be authorized to infer, from all the testimony in this case, that the engineer, when he blew the whistle, as is shown by the testimony of one of the witnesses, that he had then discovered the deceased upon the track and had perceived his peril."

The following charges were given at the instance of the plaintiff : "(1) The jury has the right to draw such inference from the facts in the case proven to their reasonable satisfaction as they believe to be fair and reasonable and consistent with the evidence in the case. (2) If the jury are reasonably satisfied from the evidence that deceased, E. E. Kirby, at or about the time and place named in the complaint, was lying down on the track of the railroad, and was then and there in a position of peril from defendant's approaching train on said railroad, and that the agent and servants of defendant then and there in control and management of said train saw the peril of said Kirby, and after the discovery of said peril, the said agents and servants of defendant negligently ran such train of cars on said Kirby and killed

him, and that said negligence of defendant's agents and servants was proximately the cause of the death of plaintiff's intestate, then the jury must find for the plaintiff."

HUMES & SPEAKE, for appellant. The affirmative charge should have been given for the defendant.—*Southern Ry. Co. v. Gullatt*, 150 Ala. 318; *Southern Ry. Co. v. Stewart*, 45 South. 51. The place of residence of the witness Reed and of Kirby, during his lifetime, was immaterial and should have been excluded.—*Bir. R. & E. Co. v. Clay*, 108 Ala. 233. Osborn was not shown to be competent to testify as to the handling of a train of the character that killed deceased.—*Bir. R. & E. Co. v. Butler*, 135 Ala. 388; 5 Ency of Evi. 530. The number of coaches in the train going west at that time of the day, other than the particular train, was immaterial.—*T. C. I. & R. R. Co. v. Vanford*, 125 Ala. 349. Counsel discuss given and refused charges, but without citation of authority.

BILBRO & MOODY, for appellee. Under the facts in this case, the jury could reasonably find that the deceased was on the track, that the engineer saw him on the track in a position of peril and negligently failed to use proper and reasonable preventive efforts to avoid injuring him. —*Cent. of Ga. Ry. Co. v. Partridge*, 136 Ala. 587. Charges 1 and 2 were properly given.—16 Cyc. 1050; *Tanner v. Hughes*, 53 Pa. St. 289. Counsel duscuss given and refused charges, but without citation of authority.

McCLELLAN, J.—The report of this case on former appeal may be found in 150 Ala. 318, 43 South. 577. The second count of the complaint, upon which the trial

was had, ascribes the negligence to liability to the operatives of the train by which Kirby was killed, in that, after discovery of his peril, proper care and diligence was not exercised to avert the injury to him. The particular averment is "that the agents and servants of the defendant then and there in the control and management of said train saw the peril of the plaintiff's intestate, and after the discovery of said peril" the train was negligently run upon intestate, killing him.

The predicate to the duty alleged in the count to have been breached, to the proximately consequent injury of intestate, is knowledge of the peril of intestate by those in control of the defendant's train. Of course, to make out the case under the count, the averred fact of knowledge of the peril stated was absolutely essential. It is insisted that, on the trial after reversal, this testimony so far sustained the important averment and condition to the duty declared as to carry the prima facie case and to require the submission of the question to the determination of the jury, namely, that one Kennemar was sitting in a room of his house, near the rail way; that he heard three or four short, shrill whistles, one right after the other; that he had lived near a railroad all his life, and knew the blasts that are made for cattle and things on the track; that he had often observed that kind of blowing for things on the track; that he at once ran from the room and across the porch, a distance of about 18 feet, to the edge of the porch, looked in the direction from which the train was coming saw it emerge from a skirt of woods about 80 yards from where blood from the intestate appeared on the track, and then looked along the track in front of the train, but could not see anything; and that, had a man been standing upon the track, he could have seen him.

We have considered with great care the question indicated, and are not prepared to say that the trial court erred in the submission of the matter to the jury. The inference that the engineer saw intestate on the track, before an oncoming train, running 25 or 30 miles an hour, may be reasonably deduced from the fact, testified to by Kennemar, that the signal heard by him he had often heard used for cattle and things on the track, and from the further uncontroverted fact that intestate was on the track when the train struck and killed him. Whether this inference should be drawn is, of course, another question, which must be left to the sound discretion of the jury. It is unquestionably an argument against the adoption of such an inference, under the circumstances, that the blows of the whistle may have been given for a different purpose or suggested by a different object on the track. But this is an argument only in opposition to the adoption of the inference reasonably deducible from the facts testified to. Likewise, it is an argument only that, though the blows were sounded with reference to intestate, and his proximity to, or attitude about, the track ahead of the train, the peril of intestate may not have then existed and have been known to the engineer; because, if the jury credited the testimony of Kennemar, the whistles blown were, as he often heard, used when cattle and things were on the track and, if so, intestate was on the track, in a down posture, before an oncoming train, and, if so, he was in a position of extreme peril, unless the train was stopped. We have said enough to indicate the ground for our conclusion that the general affirmative charge for the defendant was properly refused on this phase of the case.

On the former appeal there was no testimony tending to show that the train could, by the exercise of proper care and diligence, have been stopped short of the point

of contact with intestate. On this trial there was testimony tending to show that the train could have been so stopped by the exercise of such care and diligence. If the jury, as they might, from the testimony, have done, found that the discovery of intestate's peril was made at the time the whistle was sounded, then the duty to resort to the means suggested by due care and diligence arose, and, if some tendencies of the evidence were credited by the jury, these means would have averted the injury.

The testimony, to which defendant objected, showing where intestate resided before his death, and also that showing where and for how long the witness had resided at his place of residence, could not have worked injury to the defendant.

The question to the witness Osborne, as an expert, in reference to the distance in which a passenger train of five or six cars, of certain equipment, running 25 or 30 miles an hour, could be stopped, was objected to upon the grounds of illegality, immateriality, and because the witness was not qualified as an expert. The two first grounds did not take the point, argued in brief, that elements were included in the hypothetical question not shown by the evidence. The broad grounds of illegality and immateriality were not definite enough to direct the court's attention to the point indicated and now argued. We think Osborne qualified as an expert in the operation of engines. He had served, about 20 years ago, 2 years as a fireman and 3 years as a freight train engineer, though he never ran a passenger train, and had "for a long time noticed passenger trains being stopped." The general similarity between locomotives used for passenger and freight service is sufficient to justify, in respect of their operation, the opinion of a person familiar with the other and without experience with the first.

However that may be, there is nothing in the record tending to show that the engine drawing the train in question was not of the same type as that usually used to draw freight trains. Nor do we think the mere dissimilarity between the cars composing a freight train and those composing a passenger train necessarily renders valueless a person's opinion whose experience has been limited to the handling of the other class of trains. The relative distance in which either may be the more quickly stopped is, as appears, subject to many conditions of track, weather, and appliances; and that some conditions are present and some are absent cannot disqualify one shown to have had several years of experience in operating locomotives. The weight to be given the opinion of the expert is, in this as in all cases, a very different matter. The court properly overruled the objections to the question to Osborne.

The plaintiff was permitted, over objection, to prove how many coaches or cars the daily train of the defendant corresponding in schedule and number to that inflicting the injury usually carried. We think this was error. It had no sort of tendency to prove the composition of the train in question, and was, therefore, wholly immaterial.—*T. C. I. & R. R. Co. v. Hansford,* 125 Ala. 349, 365, 28 South. 45, 82 Am. St. Rep. 241. Evidence of the composition of this train could have been easily secured by propounding interrogatories under the statute, if, indeed, not otherwise.

Charge 1 and 2, given at the instance of plaintiff, are not subject to appellant's criticisms of them, and were properly given.

From the bill it appears that the engineer who had control of the train in question was present in the court-room upon the trial and was not examined. The defendant offered no evidence of any character. So far as the

bill shows there was no reference in the argument of counsel to any presumption to be indulged on account of the failure to examine the engineer, nor any special instructions requested by plaintiff in that connection. In this state of the case those special charges expressing a denial of any such presumption from the failure to examine the engineer were patently abstract, and no errors attend their refusal.

We have carefully examined the other charges requested by, and refused to, defendant. They are each either abstract, argumentative, or affirmatively bad, and were well refused. As stated before, the issues were for the jury under all the facts and circumstances shown by the evidence; and hence the affirmative charge asked for the defendant was correctly refused by the court.

The judgment, for the error stated, is reversed, and the cause is remanded.

Reversed and remanded.

HARALSON, DOWDELL, and ANDERSON, JJ., concur.