# Atkinson, *et al. v.* Kelley.

## *Crossing Accident.*

(Decided June 3, 1913. Rehearing denied June 19, 1913.
62 South. 441.)

1. *Railroads; Persons on Track; Pleading.*—In an action for the wrongful death of an intestate, who was found near defendant's track, a complaint alleging that defendant's servants while acting within the line and scope of their authority, wantonly, willfully or intentionally caused an engine or train of cars to strike deceased, etc., is not insufficient because of the disjunctive averments.

2. *Same; Trespasser.*—The evidence in this state stated and held to show that plaintiff's intestate was a trespasser on defendant's track.

3. *Same; Duty to.*—A railroad company owes to a trespasser on its track no duty except to use all reasonable efforts to prevent injury after discovery of peril, and unless there is knowledge of the peril, the company cannot be held negligent.

3. *Same; Duty to Keep Lookout.*—An engineer is not bound to keep a lookout for a trespasser whom he does not know to be on the track.

5. *Same; Evidence; Sufficiency.*—The evidence held not only insufficient to show that defendant's servants negligently failed to avoid the injury after discovering deceased's peril, but also insufficient to show that deceased was struck by a train.

6. *Appeal and Error; Assignments; Waiver.*—Errors assigned but not insisted on in brief or argument, are considered waived.

APPEAL from Clay County Court.

Heard before Hon. E. J. GARRISON.

Action by T. A. G. Kelley, as administrator against H. M. Atkinson and others, as receivers for damages for the death of his intestate. Judgment for plaintiff and defendants appeals. Reversed and remanded.

TILLMAN, BRADLEY & MORROW, CHARLES E. RICE, and WHATLEY & CORNELIUS, for appellant. It is undisputed in this case that intestate was a trespasser at the time he was struck by one of appellant's trains.—*Sou. Ry. v. Gullatt,* 150 Ala. 320; *Sou. Ry. Co. v. Gullatt,*

158 Ala. 504; *C. of G. Ry. Co. v. Blackmon,* 169 Ala. 304; *Mizzell v. Sou. Ry. Co.,* 132 Ala. 506; *Sou. Ry. Co. v. Forrister,* 158 Ala. 482; *N. C. & St. L. Ry. Co. v. Harris,* 142 Ala. 352; *B'ham. Sou. Ry. Co. v. Fox,* 52 South. 889; *Sou. Ry. Co. v. Drake,* 51 South. 996; *Sou. Ry. Co. v. Bush,* 122 Ala. 470; 26 South. 168; *Randle v. B. R. L. & P. Co.,* 158 Ala. 534; *B. R. L. & P. Co. v. Hays,* 44 South 1032; *Johnson v. B. R. L. & P. Co.,* 43 South. 33. The intestate being a trespasser, on defendant's track at the time he was struck by one of defendant's trains, the defendant's servants owed him only the duty of using all means at hand to prevent injuring him, *after discovering his peril and after becoming aware that he could not or would not extricate himself therefrom.—C. of G. Ry. Co. v. Blackmon,* 169 Ala. 308; *Sou. Ry. Co. v. Gullatt,* 150 Ala. 318; *Sou. Ry. Co. v. Bush,* 122 Ala. 470; *A. G. S. Ry. Co. v. Mc-Whorter,* 156 Ala. 269; *L. & N. v. Young,* 153 Ala. 232; *Randle v. B. R. L. & P. Co.,* 158 Ala. 534. It is also undisputed from the testimony in the case that intestate was not on the right-of-way of defendant by invitation, permission or acquiescence.—*A. G. S. R. R. Co. v. Godfrey,* 156 Ala. 207; *Sou. Ry. Co. v. Fox,* 52 South. 889. We have not seen appellee's brief, but from his position on the trial we apprehend that it will be contended that it was the duty of the engineer to keep a look-out for objects on the track, but our court has expressly considered this and has construed section 5473 of the Code holding that no such duty was owing a trespasser. In support of this see:—*Sou. Ry. Co. v. Drake,* 51 South. 996; *Smith v. C. of G. Ry. Co.,* 51 South. 793; *Lacey-Burk Co. v. Holmes,* 51 South. 236. Our statutes requiring signals to be given for public road crossings, are made to protect the public using such crossings, and not to protect trespassers. This is ex-

pressly decided in the case of *Lewis vs. Sou. Ry. Co.*, 143 Ala. 133. According to the undisputed evidence in this case the intestate was found 65 or 75 yards west of the public road crossing. He was not, therefore, at or near the public road crossing within the meaning of our statute, section 5476. Except at the places named in section 5476, there is no greater degree of care required of railroads than at any other place.—*So. Ry. Co. v. Smith*, 163 Ala. 174, 50 South. 390; *L. & N. v. Holland*, 164 Ala. 73, 51 South. 365; *Carlisle v. A. G. S.*, 166 Ala. 591, 52 South. 341. The statute does not render railroad companies absolutely liable even for injuries at public road crossings. A violation of the statute must be the proximate cause of the injury.—*Weatherly v. N. C. & St. L.*, 51 South. 959; *H. K. B. & M. Co. v. B. R. & S. Co.*, 100 Ala. The case was submitted to the jury by the court upon the question of subsequent negligence. This question has often been considered by our court and it has been uniformly held as in the case of *Johnson v. B. R. L. & P. Co.*, (149 Ala. 538) that *"there must be actual knowledge of the peril, otherwise there can be nothing upon which to predicate subsequent negligence."* [Italics ours.]—*A. G. S. Ry. Co. v. McWhorter*, 156 Ala. 277; *L. & N. v. Young*, 135 Ala. 232; *L. & N. v. Brown*, 121 Ala. 227; *Sands v. L. & N.*, 156 Ala. 326; *C. of G. v. Lamb*, 124 Ala. 172; *So. Ry. v. Bush*, 122 Ala. 483; *Carlisle v. A. G. S.*, 52 South. 341; *So. Ry. v. Shelton*, 136 Ala. 206; *A. E. & G. Co. v. Rosen*, 159 Ala. 203; *Randle v. B. R. L. & P. Co.*, 158 Ala. 535; *So. Ry. v. Gullatt*, 150 Ala. 320. An engineer upon seeing an adult person upon, near, or approaching his track, unless such person be lying down upon the track, certainly has the right to assume that such person will get out of danger, or not go into a place of danger, and he also has the right to act upon

that assumption until it becomes reasonably apparent such person is in danger, or cannot or will not extricate himself. There is no duty upon him to make any effort to stop his train upon seeing an adult person on or near his track, until it becomes reasonably apparent such person was in, or going into a place of danger. The authorities are a unit in support of this proposition.— *Carlisle v. A. G. S.,* 166 Ala. 591; *So. Ry. Co. v. Bush,* 122 Ala. 483; *A. E. & G. Co. v. Rosen,* 159 Ala. 203; *B. R. L. & P. Co. v. Williams,* 158 Ala. 381; *Randle v. B. R. L. & P. Co.,* 158 Ala. 534; *B. R. L. & P. Co. v. Clark,* 41 South. 829; *Sands v. L. & N.,* 156 Ala. 327; *A. G. S. v. McWhorter,* 158 Ala. 381; *L. & N. v. Young,* 153 Ala. 232; *So. Ry. Co. v. Gullatt,* 150 Ala. 320; *So. Ry. Co. v. Shelton,* 136 Ala. 206.

O. B. CORNELIUS, RIDDLE, ELLIS, RIDDLE & PRUET, and RIDDLE & BURT, for appellee. When a person is killed at a public road-crossing on a railroad, the burden of proof is on the railroad in an action for damages on account of death to show a compliance with the law in reference to keeping a look-out, blowing the whistle and ringing the bell and everything else the law requires. In fact, the burden of proof is on the defendant that there was no negligence.—Code of Ala. Sec. 5473 et seq. When a person is on a railroad track in front of an engine and the engineer is shown to be looking out ahead of his engine, or, there are facts from which a jury could infer that he was looking ahead, then the jury is authorized to find from the evidence that the engineer saw such person on the track, even though the engineer swears he did not.—*Carlisle v. A. G. S. R. R.,* 52 South. 341; *Sou. Ry. Co. v. Bush,* 122 Ala. 470 (26 South. 168); *Sou. Ry. Co. v. Shelton,* 136 Ala. 191 (34 South. 194). When facts are shown from which a jury

would be authorized to find that any of the trainmen discovered a person injured in a place of danger, on or near the track, then the burden of proof is on the railroad to show that there was no subsequent negligence, when there is a count in the complaint for subsequent negligence.—*Carlisle v. A. G. S. R. R.,* 52 South 341. A person has a right, on exercising due care, to cross a railroad anywhere, as much so in the wilds of the forest as at a public road-crossing, and is not a trespasser in undertaking to cross a railroad in a proper manner, and when a pedestrian is undertaking to cross a railroad at a public road-crossing in the wilds of the forest or any other place in a proper manner, the railroad owes him the duty to keep a look-out for him and the failure to discharge this duty resulting in damages or injury to him, gives a cause of action to which the railroad company is liable.—*B. R. L. & P. Co. v. Jones,* 153 Ala. 157; *Birmingham Ry. & Electric Co. v. City Stable Co.,* 119 Ala. 615; *M. & C. R. R. Co. v. Lyon,* 62 Ala. 71; *Glass v. M. & C. R. R. Co.,* 94 Ala. 581. Where the evidence is in conflict on any material question, the same is a question for the jury, and even where the evidence is not in conflict but where different reasonable men are liable to draw different conclusions from it, then it is a question for the jury.—*Bean Bros. v. Johnston,* 140 Ala. 339; *M. J. & H. C. Co. v. Bramberg,* 141 Ala. 258; *M. Cormick Co. v. Lowe,* 151 Ala. 313.

PELHAM, J.—The appellee brought suit in the trial court to recover damages for the negligent killing of plaintiff's intestate, W. H. Kelley.

One of the counts of the complaint on which the case was submitted to the jury alleges that the agents or servants of the defendant, acting within the line and

scope of their authority, wantonly, willfully, or inten-
tionally caused an engine or train of cars to run over
or against plaintiff's intestate, and that as a proximate
consequence said intestate received the injuries causing
his death.  The demurrers assigned to this count on the
ground that, the allegation of the wanton or intentional
act complained of as having caused the injury being in
the disjunctive, the count is bad for that reason, were
overruled by the court and are made the basis of assign-
ments of error here insisted upon.  This count is suffi-
cient as against the demurrers interposed to it, in that
it alleges that the injury complained of was wanton-
ly or intentionally inflicted.—*B. R. L. & P. Co. v. Wise,*
149 Ala. 492, 42 South. 821, and authorities cited in
the opinion; *M. J. & K. C. R. Co. v. Smith,* 146 Ala. 312,
40 South. 763.

There are numerous other assignments of error based
on the rulings of the court on the pleadings, but they
are not insisted upon in argument or brief so as to
necessitate a discussion of them here.  It appears from
the record that the counts of the complaint other than
count 1 as last amended and counts A. B, and C were
abandoned and the case submited to the jury on these
counts alone; one of them being grounded upon allega-
tions of subsequent negligence.

The cardinal question involved and presented by the
appeal, and the proposition insisted upon most strenu-
ously and argued at greatest length, is the refusal of
the court to give the general charge requested in writing
on behalf of the defendant.

It is shown without conflict in the evidence set out in
the bill of exceptions that plaintiff's intestate was found
dead near the track of defendant's railroad at about 9:45
o'clock on the morning of December 8, 1911.  His body
was lying with the head toward the track and about two

feet from the south rail on the south side of the track, the body stretched out in a position nearly at a right angle to the rails. There was a wound on the scalp, the skull was fractured and punctured, and the body was considerably bruised on the right side from the shoulder to below the calf of the leg. The physician who examined the intestate's body where it was found near the track, a short time after it was discovered and before it was moved, was introduced as a witness for the plaintiff on the trial, and testified that in his opinion the injuries evidenced by the bruises and wounds were sufficient to, and did, cause the death of the intestate but that he could not tell whether the bruises and injuries had been caused by his having been struck by a locomotive or not. No witness testified to having seen the intestate at the time he received the injuries causing his death. He was last seen alive by any one who knew and recognized him on the evening of December 7, 1911, about "good dark," and, so far as the evidence shows, was not again seen, to be recognized, by any one until found by the crew of one of defendant's trains at 9:45 o'clock the next morning, at which time the body was cold and stiff, and in the opinion of the physician who examined him he had been dead some time. The evidence of some of the plaintiff's witnesses, elicited on cross-examination, and of several of the defendant's witnesses, was to the effect that when last seen, about dark on December 7th, the intestate was considerably intoxicated; some of the witnesses pronouncing him to be in a drunken condition. At this time (when last seen alive) he was going west along the defendant's railroad track near a public road crossing at a point on the railroad known as Bostic's Spur. This crossing is about a mile east of the station called Cragford; it being, as will be observed, in the direction of Cragford that

plaintiff's intestate was going when last seen by some of
the witnesses. The point at which the body was found
near the track was about 75 yards distant (west) from
the road crossing at Bostic's Spur, toward Cragford.
There were no signs or indications on or along the
track or by the side of it, or on the rails or cross-ties,
showing that the intestate, Kelley, had been hit or run
over by an engine or cars on defendant's railroad, and
no disturbance of the ground, or mark or indication of
any kind or character, at any place near the body, was
found indicating that it had been dragged to this point
from some other place. The track at this place was
nearly level with the surface of the ground, and the
body showed no appearance whatever of having been
dragged to the place, but, as stated by several witnesses,
looked as if it had been "picked up and laid down" right
where it was found. It was admitted by both parties
on the trial, to shorten the examination of witnesses,
"that Mr. Kelley appeared to have been picked up and
laid down in the position in which he was found; that
there was no sign on the ground of his having been
dragged." Some of the witnesses testified to seeing a
few threads on the rails or cross-ties, some 10 to 20
feet west from where the body was lying, that had the
appearance of having come from the torn place on the
right shoulder of the overcoat of the deceased. There
was no blood or mark of any kind on or between the rails
or on the cross-ties indicating where or how the deceas-
ed had been struck. To the west from the place where
the body was found, there was a curve in the track that
prevented a view "up" along the track for a greater
distance than from 60 to 150 yards (as variously esti-
mated by the witnesses); but the track to the east was
straight for some distance, and a person could see east,
"down," the track for from $\frac{1}{4}$ to $\frac{3}{4}$ of a mile, accord-

[Atkinson, et al. v. Kelley.]

ing to the testimony of the witnesses. The body of the plaintiff's intestate was found at a point about halfway between the curve and the road crossing at Bostic's Spur.

There was no contention nor any testimony to support a contention that the plaintiff's intestate was on the defendant's right of way by invitation, permission, or acquiescence of the defendant. It was shown that the following trains passed over the defendant's railroad at the point where plaintiff's intestate's body was found, covering the period from the time that he was last seen alive on the evening of December 7th until the time his body was found the next morning, December 8, 1911, viz.: No. 72, east bound, passed Cragford at 6:05 p. m., December 7th; extra No. 1,608, east bound, passed Cragford at 6:32 p. m., December 7th; No. 26, east bound, passed Cragford at 9:31 p. m., December 7th; No. 71, west bound, passed Cragford at 4 o'clock a. m., December 8th; No. 74, east bound, passed Cragford between 6.50 and 7 o'clock a. m., December 8th; No. 25, west bound, passed Cragford at 7:34 o'clock a. m., December 8th; and No. 73, west bound, passed Cragford about 9:45 o'clock a. m., December 8th. The crew of this train discovered the body lying near the track as we have described, stopped the train, and reported the matter, but did not move or disturb the position in which they found the body lying. The engineers of each of the seven trains were examined as witnesses, and each of them testified that he did not see the plaintiff's intestate, except the engineer of No. 73, the train whose crew discovered the dead body lying near the track. The engineer of the extra 1,608, testified that as he passed Bostic's Spur he saw an elderly man sitting on a pile of lumber alongside the track at that place, and that this man waved a bottle at him as the

train passed. Evidence was also introduced showing that plaintiff's intestate corresponded in appearance, etc., with the description given by this engineer. Each and all of these engineers testified positively that as they passed this place on the occasion in question they saw no person on or near the track in the vicinity of the place where the body of plaintiff's intestate was found, and that so far as they knew he was not struck by the locomotives or cars in the trains operated by them. The testimony of these engineers varied as to the rates of speed at which they were going, the nature of the look-outs ahead they were keeping as they approached and passed the place in question, and the distances in which their trains could have been stopped. The evidence of the engineer of train No. 72 (the first train to pass this point after the deceased was last seen alive) was to the effect that he was keeping a lookout ahead; but, upon being asked if he kept a steady lookout after leaving the curve west of the road crossing until reaching the crossing, he stated: "No, sir; I had other duties to perform besides looking ahead." The evidence of this engineer is a fair sample of that of the others along this line about keeping a lookout. Some of them testified that they did not know for some time afterward that Kelley, the plaintiff's intestate, had been found dead near the track close to Bostic's Spur, and that they did not remember and could not then recall what they were doing at the particular time they passed there on the occasion in question about keeping a lookout ahead.

No other inference can be drawn from the whole evidence than that, if plaintiff's intestate received the injuries causing his death by having been struck by an engine or car on the defendant's railroad, he was a trespasser at the time of being struck.—*So. Ry. Co. v.*

*Drake,* 166 Ala.· 540, 51 South. 996; *M.·& C. R. R.· Co. v. Womack,* 84 Ala. 149, 4 South. 618, and authorities cited in brief of appellant. It would seem from the authorities cited by counsel in brief that the fact that the deceased was a trespasser is conceded, and it is manifest from the record that the case was submitted to the jury on the question of subsequent negligence, and it is apparent from the testimony set out that the plaintiff's right of recovery depends upon showing subsequent negligence upon the part of some person or persons in the employ of the defendant in the operation of its trains.

The plaintiff's intestate being a trespasser on the defendant's right of way without any pretense of· invitation, permission, or acquiescence upon the part of the defendant, it owed to him only the duty of using all reasonable efforts to prevent the injury after discovering his peril on the track, or in dangerous proximity thereto, and becoming aware that he could not or did not intend to attempt to extricate himself therefrom.—*So. Ry. Co. v. Gullatt,* 150 Ala. 318, 43 South. 577. Unless there is knowledge of the peril, there is nothing upon which to predicate subsequent negligence.—*Johnson v. B. R. L. & P. Co.,* 149 Ala. 538, 43 South. 33.

There is absolutely no testimony showing that the plaintiff's intestate was on the track, or in dangerous proximity thereto, in advance of an engine on defendant's railroad, or that the engineer in charge of the operation of any locomotive saw, or could have seen, him in time to prevent the injury. Nor is there any evidence affording a basis from which such an inference could be drawn. Under the undisputed facts in this case there was no duty resting upon the servants of the defendant to keep a lookout for the plaintiff's intestate at the point on the track where he was discovered fatally injured.—*So. Ry. Co. v. Drake,* 166 Ala. 540, 51 South.

996; *Smith v. C. of Ga. Ry. Co.*, 165 Ala. 407, 51 South. 792.

Not only is there no evidence that would fairly warrant the inference that plaintiff's intestate was on the track ahead of an engine in time for the engineer in charge to stop after becoming aware of the intestate's peril before striking him, but there is no evidence that he was struck by an engine. The doctor who examined the injuries on the plaintiff's intestate before the body had been moved, a witness introduced by the plaintiff, testified that he was unable to conclude that an engine struck the deceased, and if, after an examination made under such circumstances as these, this witness, drawing to his aid his technical knowledge, could not say that an engine had struck the deceased, how could any one else say that the deceased was struck by an engine or locomotive? What basis for a finding of this fact by the jury was afforded by the evidence? The evidence set out does not in our opinion disclose any testimony authorizing a finding of this fact necessary to the plaintiff's recovery. So far as anything appears in the evidence to the contrary, it might as well be assumed from the facts proven that the plaintiff's intestate received the injuries from having come in contact with the side of a car, or in some other way, as that he was struck by an engine when in front of it on the track. It would be but the merest conjecture from the evidence adduced upon the trial, as set out in the bill of exceptions, to say how the plaintiff's intestate was struck and injured. Certainly there is nothing to show that he was on the track ahead of the engine when struck, and the court was in error in refusing the general charge requested by the defendant.

An analysis of the opinions in the following cases will be found to support our holding as applied to the facts

[Southern Railway v. Caldwell-Spence Company.]

in this case:—*Carlisle v. A. G. S. R. R. Co.* 166 Ala. 591, 52 South. 341; *So. Ry. Co. v. Stewart,* 153 Ala. 138, 45 South. 51; *Johnson v. B. R. L. & P. Co.,* 149 Ala. 537, 43 South. 33; *So. Ry. Co. v. Stewart,* 164 Ala. 171, 51 South. 324; *So. Ry. Co. v. Gullatt,* 150 Ala. 320, 43 South. 577; *Mizzell v. So. Ry. Co.,* 132 Ala. 506, 31 South. 86; *So. Ry. Co. v. Drake,* 166 Ala. 540, 51 South. 996; *So. Ry. Co. v. Gullatt,* 158 Ala. 504, 48 South. 472.

For the error in refusing the general charge requested by the defendant, the judgment of the court below must be reversed.

Reversed and remanded.