## CENTRAL OF GEORGIA RY. CO. v. LEE.

### 7 Div. 192.

Supreme Court of Alabama.

Nov. 2, 1933.

Rehearing Denied Jan. 18, 1934.

W. H. Sadler, Jr., of Birmingham, for appellant.

On former appeal (Central of Georgia Ry. Co. v. Lee, 225 Ala. 283, 142 So. 660), we held that singling out the evidence most favorable to plaintiff a jury case was presented, and the affirmative charge for defendant was properly refused; but that the great weight of the evidence disclosed such state of facts that any inference of negligence as charged would be a mere matter of conjecture, and a new trial was awarded.

In view of a new trial, a discussion of the evidence in detail was withheld.

The present appeal presents the same issues.

Ed. Lee, plaintiff's intestate, a trespasser on the track of defendant, was run over and killed by a locomotive, drawing a passenger train of four cars. Place, on or just off the east end of the railway bridge over Coosa river, about one mile west of Childersburg. Time, about 6:15 p. m., just after dark.

Evidence of several witnesses discloses that deceased was in Childersburg late that afternoon, in a more or less drunken condition. His home was a few hundred yards west of the bridge. He was seen by more than one witness walking west, toward the bridge, at one time sitting on the track, and last seen before the accident, walking on the track about one hundred yards from the bridge. According to estimates of witnesses, he reached the bridge about the time the train was due from the west.

Several witnesses say he was staggering as he walked. When last seen, the witness says, he was reeling from side to side of the track.

It is a fair inference that, in a drunken condition, he was going home, and purposed to walk across the bridge.

The train did not stop nor reduce its speed. The conductor testifies that hearing a knocking under the passenger coach at that point, he made a hasty examination at Childersburg, suspecting a dislocated belt connected with the lighting apparatus under the coach; that the belt was found intact, and a further examination was made at Sylacauga when blood stains on the engine trucks, and other signs, were discovered indicating a man had been killed. Communication was had with the crew of a west-bound train, which arrived at the scene about 8 o'clock. A search disclosed the train had passed full length over the body, mangling, and leaving blood stains, fragments of the body, and clothing strewn along the track more than a hundred yards.

One of the strongly contested issues is whether the deceased was out on the bridge when struck, or just at the end of the bridge.

The materiality of this inquiry grows out of the apparent danger, if seen by the engineer, in one or the other positions.

W. W. Wallace and L. H. Ellis, both of Columbiana, for appellee.

BOULDIN, Justice.

The action is under the Homicide Act (Code 1923, § 5696), based on alleged negligence after discovery of peril.

The structure of the bridge, under some evidence, would render the position of one walking thereon perilous from the moment of discovery; while at the end of the bridge, the track was on a high fill, but wide enough for one to get out of the wake of the train.

The greater number of witnesses for plaintiff and defendant, who made examination that night and next morning, state the first blood stains or other sign were found on the first cross-tie, or second or third cross-tie off the east end of the bridge. One witness for plaintiff testifies to blood stain found some twenty feet out on the bridge, and a second witness to blood stain near the end of the bridge.

Another circumstance relied upon is evidence that one foot was severed, and after careful search, never found, leading to an inference that it was cut off on the bridge and dropped into the river.

Mrs. Patton, a passenger, testified to hearing bumping sounds under the train, which, in her judgment, began on the bridge. On the last trial she is corroborated by the conductor as to such sounds, but they differ as to the place.

Further evidence on the last trial was that of a brother of deceased to the effect that some days later the engine was pointed out to him in Birmingham by the engineer, and blood stain and hair found on the crossbeam or sill of the engine.

■ The point is raised that this testimony, involving hearsay statements of the engineer, was incompetent. The evidence, however, was first introduced without objection, and objection made when again offered by way of impeachment of the engineer.

Much caution should be exercised in considering testimony of this sort on a second trial, without satisfactory explanation as to why such facts had not been disclosed and produced on the first trial.

Apart from this, it does not appear, unless by way of inference from facts above stated, whether deceased was walking, standing, sitting, or lying down when struck by the engine. Noting that this train was moving 73⅓ feet per second, it cannot be said, in view of the uncertainty as to his position, that the first large splotch of blood, with fragments of skull, would mark the spot where he was first struck.

■ Strong reliance was had on both trials upon evidence for plaintiff that alarm signals were sounded beginning before the engine reached the west end of the bridge, which was 900 feet in length, including trestle at west end, and continuing as the train ran across the bridge. The evidence is in sharp conflict on this issue. Its solution was for the jury.

Probably the most important difference between the evidence produced on the two trials is that of the engineer. On the last trial he testified he was keeping a vigilant lookout as he approached and crossed the bridge. He claims visibility was bad because of misting rain and fog. In this, he is at variance with other witnesses, who say the night was dark, but neither raining nor foggy at that time.

Without dispute the track was straight and unobstructed, and the engine was equipped with strong headlight in good condition.

The evidence is at variance as to the distance at which a man could be seen walking, standing, sitting, or lying down with the aid of the headlight. Under the evidence, we think it a fair inference that the headlight was such as required by law, namely, one which, under normal conditions of visibility, will enable the engineer to see an obstruction at stopping distance when running on schedule time.

Schedule time is given as 55 miles per hour. A man's position may enter into the question of the application of this rule.

■ We have declared the rule that evidence of an engineer of his keeping a vigilant lookout, under conditions where such lookout would discover a man on the track, is evidence that he did discover him, although he may also testify he did not. Southern Railway Co. v. Shelton, Adm'r, 136 Ala. 191, 34 So. 194; Carlisle v. Alabama Great Southern Railway, 166 Ala. 591, 52 So. 341.

■ We are impelled to hold, under all the evidence in the present record, that it was for the jury to say whether the engineer saw the deceased.

So finding, the absence of any explanation of his conduct, and his denial of seeing the deceased at all, would naturally lead to unfavorable inferences.

■ In passing on the question of a new trial, we are dealing with the cumulative presumption of like verdicts of two juries, who saw and heard the witnesses, and the action of the trial judge in declining to disturb such verdict. We still have grave doubts as to the justice of such verdict, but, under the guiding rules in such cases, we cannot assuredly declare it is clearly and manifestly wrong.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.