6 So.2d 874

**LOUISVILLE & N. R. CO., et al. v. ROGERS.**

**6 Div. 885.**

Supreme Court of Alabama.

March 12, 1942.

450

Chas. Eyster, of Decatur, and Huey, Welch & Stone, of Bessemer, for appellants.

Ross, Ross & Ross, of Bessemer, for appellee.

BROWN, Justice.

■■ This is an action on the case by the administratrix of Tobe R. Rogers, deceased, under the Homicide Act, Code of 1923, § 5696, Code of 1940, Title 7, § 123, against the appellants, the Louisville and Nashville Railroad Company, and its engineer Hobbs, for negligently causing the death of the plaintiff's intestate. The complaint consists of three counts. The first count, in the first paragraph thereof avers that said Hobbs in charge of the defendants' locomotive, acting within the scope of his authority, "negligently ran said locomotive into, over or against the plaintiff's said intestate and so injured him that as a proximate result thereof he died." This averment is broad enough to embrace simple initial negligence and the averment of inducement in the count, when construed most strongly against the pleader, shows that said intestate was a trespasser on the tracks of the railroad company at a point where the defendants owed him no duty other than not to injure him after the engineer discovered his peril, or wilfully or wantonly injure him. Gadsden & Attalla Union Ry. Co. v. Julian, 133 Ala. 371, 32 So. 135.

■ The last paragraph charges negligence after the discovery of intestate's peril, and undertakes to state the quo modo of such negligence, but pretermits the element that the engineer failed to use all appliances at hand *"known to skillful engineers,"* to prevent the injury. Code of 1923, § 9952, Code of 1940, Title 48, § 170; Johnson v. Louisville & N. R. Co., 227 Ala. 103, 108, 148 So. 822.

Grounds 2 and 3 filed March 13, 1940, and ground L of the additional demurrer filed December 9, 1940, point out said defects and the court erred in overruling the demurrer to said count 1.

The second count which ascribes the injury and death of plaintiff's intestate to negligence of the engineer after discovery of intestate's peril, by way of inducement avers:

"The plaintiff's intestate, Tobe R. Rogers, was in a place of danger upon *or near to the tract* [track] *where said defendant was operating said locomotive and train of cars, to-wit about ¼ of a mile north of Shannon,* a station on the Louisville & Nashville Railroad Company's said railroad in Jefferson County, Alabama." [Italics supplied.]

The third count, also predicated on the last clear chance doctrine, avers: "And on said date the plaintiff's intestate, Tobe R. Rogers, was in a place of danger upon *or near to the track of cars,* to-wit, about ¼ of a mile north of Shannon, a station on the Louisville & Nashville Railroad Company's said railroad in Jefferson County, Alabama." [Italics supplied.]

■ When these averments are construed most strongly against the pleader as must be done on demurrer, the second count avers that said intestate was near the railroad track, to-wit, a quarter of a mile therefrom, and the third count that he was "upon or near a *track of cars,* to-wit, about ¼ of a mile north of Shannon." [Italics supplied.]

We are of opinion that grounds A, B, and H were well taken to counts 2 and 3 and the court erred in overruling the demurrer.

In Southern R. Co. v. Wright, 207 Ala. 411, 92 So. 654, 655, cited to sustain the court's ruling, the first count averred, that "the plaintiff's intestate, Al Wright, was in a place of danger upon or near to the track where defendant was operating said locomotive and train of cars, to wit, near the

defendant's depot," and the third count averred "that, while her said intestate was on said track as aforesaid, and in front of said train, which was rapidly approaching him, he was in a situation of peril, which the engineer or other person in charge and control of said engine was conscious of, and knew, and knew in time to have prevented the injury to plaintiff's intestate."

The court there held, to express the holding in the language of the opinion: "We are of opinion these counts were sufficient *as against any demurrer interposed thereto,* and in this action of the court [overruling the demurrer] no error was committed. [Italics supplied.]" 207 Ala. 412, 92 So. 656.

That case does not support the ruling of the circuit court in the instant case.

The defendants pleaded the general issue in short, by consent with leave to give in evidence matters of special defense as if pleaded, with like leave to plaintiff to reply.

The plaintiff's case rests wholly upon circumstantial evidence and there is a missing link in the chain of circumstances fatal to the plaintiff's case. Defendants' train No. 99, the southbound Pan American, alleged to have caused the death, approached and passed the point where the body of the intestate was discovered two hours later, at 9:38 o'clock P. M., Sunday, August 27, 1939. The train consisted of the locomotive and tender, loaded with coal and water, baggage car, two coaches and seven sleepers, the combined length of which was 846 feet, weighing more than one thousand and seventy tons, and was moving at a speed of 50 miles per hour. The approach was around the north end of an S curve to the east and the point where the body was afterwards found was between Smith's crossing and Shannon, a station on defendants' road, about a quarter of a mile north of said station. The body, when discovered by a freight train crew that arrived at the point at 11:35 P. M., was prone between the rails of the southbound main track, face down with both arms folded under the body, head to the south and feet to the north, dressed in shirt, trousers and shoes, and the only wound on the body was a jagged scalp wound under which the skull, back of one of the ears, was crushed making a hole about the size of a dollar; a slight abrasion on the face and a scratch on one hand. There were no broken bones, other than the skull, as above stated, and the clothes on the body were unruffled, and in no way torn. *The missing link in the chain of circumstances is the whereabouts of the intestate, between the time he was last seen alive* about 10 o'clock A. M., and the time his body was found twelve hours later. There is an absence of positive evidence that he was alive and on or near the defendants' track at or near the point where the body was found at the time or immediately before defendants' said train passed said point. The defendant Hobbs, the engineer on said train, testified: "On the night of August 27, 1939, I was engineer on the Pan American Train which passed over the tracks of the Lousiville & Nashville Railroad Company at a point, ¼, ½ and ¾ of a mile north of Shannon Station, and this train at these various points was traveling, in my best judgment, in a southerly direction, at a rate of speed of 50 miles per hour, I did not at any of these places or within any of these distances see or observe any person upon or near the track at a point North of Smith's crossing. For a distance of more than a quarter of a mile North of the crossing, I was maintaining a lookout along the track in the direction which the train was traveling, and there was no one upon the track in front of the train North of Smith's crossing or dangerously near to the track. After the engine passed over Smith's Crossing and between there and Shannon Station, I did not see any one upon the track or in dangerous proximity thereto. After the engine passed over Smith's crossing and between there and Shannon Station part of my time was devoted to the discharge of my duties within the cab or the engine, and part of the time I was looking ahead, and at no time did I see or know of anyone upon the track or dangerously near thereto. My engine did not come in contact with or strike intestate. During all this time my train was traveling at a rate of speed of 50 miles per hour, and during this time the train, in my best opinion, by the use of all appliances at hand and known to skillful operatives of engines and trains could have been stopped in the following distances at the given rates of speeds, as follows:" The train moving 50 miles per hour could have been stopped within 1,562 feet "after the brakes were first applied."

The testimony further shows that the locomotive was equipped with standard headlights which enabled the engineer under normal conditions on a clear night and straight track to see the track about eight

or nine hundred feet, but not around the curve that existed in the track north of Shannon, for the reason that the rays of the headlights are cast directly ahead of the locomotive and sweep the country side along the west side of the railroad as it passed around the curve until it turned onto the point at the south end of the curve to the east.

But the appellee in opposing the appellants' contention that they were due the affirmative charge, argue as follows:

"The facts in the case of Central of Georgia Ry. v. Lee, 227 Ala. 661, 151 So. 840, are practically in point with the facts in the case at bar, and this Court held that under the evidence the question was one for the jury, and to the same effect are the cases of Southern R. Co. v. Gullatt, 158 Ala. 502, 48 So. 472, and Atkinson et al. v. Kelley, 8 Ala.App. 571, 62 So. 441. Therefore, we submit the Copeland case [Copeland v. Central of Georgia Ry. Co., 213 Ala. 620, 105 So. 809] is no authority for the appellants' contention that they were entitled to the general charge, as these cases hold unequivocally that the blowing of the alarm signals is a fact from which the jury may infer that the deceased was upon the track, and that the signs upon the track of blood, hair and dragging are facts from which the jury may infer that the engine struck the deceased.

"The determination of the facts in the case is entirely within the province of the jury to be based upon the proof and reasonable inferences to be drawn therefrom, and is not a question for the determination of the court. We submit that in cases of this kind the verdict of twelve honest and disinterested men, of wide knowledge and varied experiences, should not be disturbed.

"We do not know the position of the deceased upon the tracks at the time he was struck or the condition or the manner in which he was struck. These are for the determination of the jury, and is the jury's province based upon the proof and their common knowledge. The deceased may have been lying upon the track parallel with the tracks and the train passed over him and fractured his skull and he continued to lie in the tracks all the while. We do not know what part of the engine struck him. It might be that the deceased was near the side of the track and a projection upon the engine or car struck him on the head and he may have struggled and moved after his injury to a position inside the rails or to a position outside the rails. What happened is something that no one will ever definitely know, but from the circumstances the jury was amply justified under the evidence and law to find that the engineer discovered the deceased in a position of peril on or near the track from the blowing of the alarm signals, and the jury was authorized to infer from the signs of blood, hair and dragging upon the tracks that the engine struck him, and the preponderance of the evidence supports the jury's findings, for the appellants offered no evidence and no denial of the blowing of the whistle or the existence of the signs except in their answer to the appellee's interrogatories. The deceased's clothing mysteriously disappeared. The appellants insist that the deceased could not have been seen by the engineer by the engine's headlight in time to have avoided striking him. Under the law it will be presumed that under ordinary conditions the engine could have been stopped within the distance illuminated by its headlight, as required by law. The night of the deceased's death was a clear and fair night, and the evidence shows that the alarm whistles first started far enough away from the point where the deceased's body was found for the engine to have been stopped. Although the appellants claim that the deceased could not have been seen by the headlight of its locomotive, they contradict themselves by showing that another one of the trains, proceeding south in the same direction as the Pan American which killed the deceased, by the aid of the headlight of the engine saw the deceased upon the track and stopped the engine before it struck him, as evidenced by their answers to appellee's interrogatories. This is a conflict and makes the matter additionally one for the determination of the jury. The appellant engineer, A. E. Hobbs, in his answer to appellee's interrogatories, stated that he was looking ahead as the engine approached Smith's Crossing and after the engine passed over Smith's Crossing and between there and Shannon Station he did not see any one upon the track or in dangerous proximity thereto; that after the engine passed over Smith's Crossing and between there and Shannon Station part of his time was devoted to the discharge of his duties within the cab of the engine, and part of the time he was looking ahead, and at no time did he see or know of any one upon the track

454

or dangerously near thereto (Transcript page 73). If he was looking ahead, the jury may presume that he saw the deceased, under the well established rules of our Courts. The jury may infer that the engineer saw the deceased from the blowing of the alarm whistles, and that the engineer could see more than eight or nine hundred feet down the track because of the blowing of the alarm whistles which began at a distance of more than nine hundred feet away from the body of the deceased. This is a conflict in the evidence in the case which renders the case additionally one for the jury's determination."

This argument demonstrates that the essential elements of the plaintiff's case,—that intestate was alive and in peril upon or near the tracks at the time defendants' train passed the point where the body was discovered two hours later, and the discovery of such peril in time to prevent the engine from running upon or against him—is at best left to pure conjecture or guess:

The fact that said intestate was alive and on or near the track in peril of being run upon or against would have to be inferred; the fact that the engineer discovered the peril, against the positive testimony that intestate was not there and hence not discovered; and that he was so discovered in time for the engineer to use all means at his command known to skillful engineers to prevent the locomotive from striking him.

In Central of Georgia R. Co. v. Lee, 227 Ala. 661, 151 So. 840, cited by appellee as "practically in point with the case at bar" there was positive evidence that the intestate in that case was on the railroad tracks in a drunken condition and that he was killed and his body was mangled by the locomotive. In that case it was observed:

"Evidence of several witnesses discloses that deceased was in Childersburg late that afternoon, in a more or less drunken condition. His home was a few hundred yards west of the bridge. He was seen by more than one witness walking west, toward the bridge, at one time sitting on the track, and last seen before the accident, walking on the track about one hundred yards from the bridge. According to estimates of witnesses, he reached the bridge about the time the train was due from the west.

"Several witnesses say he was staggering as he walked. When last seen, the witness says, he was reeling from side to side of the track."

In Southern R. Co. v. Gullatt, 158 Ala. 502, 48 So. 472, 474, also cited by appellee, the uncontroverted evidence was "that intestate was on the track when the train struck and killed him," and this was the sole predicate for holding that testimony of the witness to the effect that the danger alarm was sounded before the train reached and passed the point of contact as tending to show that said intestate's peril was discovered, was admissible.

Atkinson et al. v. Kelley, 8 Ala.App. 571, 62 So. 441, 442, is more nearly in point. In that case there was evidence showing, to quote from the opinion: "When last seen, about dark on December 7th, the intestate was considerably intoxicated; some of the witnesses pronouncing him to be in a drunken condition. At this time (when last seen alive) he was going west along the defendant's railroad track near a public road crossing at a point on the railroad known as Bostic's Spur. This crossing is about a mile east of the station called Cragford; it being, as will be observed, in the direction of Cragford that plaintiff's intestate was going when last seen by some of the witnesses. The point at which the body was found near the track was about 75 yards distant (west) from the road crossing at Bostic's Spur toward Cragford."

In concluding the opinion in that case, it was observed: "It would be but the merest conjecture from the evidence adduced upon the trial, as set out in the bill of exceptions, to say how the plaintiff's intestate was struck and injured. Certainly there is nothing to show that he was on the track ahead of the engine when struck, and the court was in error in refusing the general charge requested by the defendant."

Appellee also argues that the fact that the body was discovered by the crew of the freight train that reached the point at 11:35 P. M., warranted an inference that engineer Hobbs discovered intestate in peril at 9:38 P. M. The evidence shows without dispute that the body was on the track at the time and before the freight train crew discovered it. This evidence goes to show that intestate was not on the track at 9:38, rather than that he was.

■ There is nothing in the evidence to warrant a recovery for simple initial negligence. If intestate went upon the tracks at or near the point where his body was

found, of his own initiative and will, he was a trespasser. If he was murdered and put upon the track as a cover for the crime, the defendants are not responsible for his death.

Under the last clear chance doctrine the burden was on the plaintiff to show that said intestate was alive and on or near the defendants' tracks in peril and that as the Pan American approached, his peril was actually discovered by the defendant Hobbs in time to avert his injury and death. Central of Georgia R. Co. v. Lee, 225 Ala. 283, 142 So. 660; Central of Georgia Railway Co. v. Ellison, 199 Ala. 571, 75 So. 159.

In this she has failed, and the court erred in refusing the general affirmative charge requested by the defendants. Evidence which affords nothing more than mere speculation, conjecture or guess is wholly insufficient to warrant the submission of a case to the jury. St. Louis & S. F. R. Co. v. Dorman, 205 Ala. 609, 89 So. 70; Central of Georgia Ry. Co. v. Ellison, supra.

For the refusal of the general affirmative charge and the other errors noted, the judgment is reversed. The other questions argued may not arise again.

Reversed and remanded.

GARDNER, C. J., THOMAS and LIVINGSTON, JJ., concur in the opinion except as to what is said about the sufficiency of count 2 of the complaint, and as to this they express no opinion.