168 So.2d 220

Martin C. WILLIAMS

v.

Linda Calloway PALMER, pro ami.

6 Div. 990.

Supreme Court of Alabama.

Aug. 27, 1964.

Rehearing Denied Nov. 5, 1964.

Drennen, Loeb & Drennen and Hogan, Callaway & Vance, Birmingham, for appellee.

London, Yancey, Clark & Allen, Birmingham, for appellant.

HARWOOD, Justice.

This is an appeal by the defendant, Martin C. Williams, from a judgment in the Circuit Court of Jefferson County in favor of the plaintiff, Linda Calloway Palmer, a minor.

This case arose out of an automobile collision which occurred at the intersection of Euclid Avenue and Greenbriar Lane in the city of Mountain Brook at approximately 7:30 P.M. on July 26, 1959. It was dark at the time the accident occurred.

The plaintiff, a sixteen year old girl, was riding north on Greenbriar Lane in her father's pickup truck which was being driven by her father. Her mother and sister were also in the truck. All four of them were seated with their backs against the seat. The plaintiff was seated on the right side of the truck next to the door.

The defendant was driving an automobile west along Euclid Avenue. His car was carrying seven boys, three in the front seat and four in the rear.

A hedge extended along the side of Greenbriar Lane in such a manner that neither driver could see the other as they approached the intersection.

There was at the time of the accident a traffic light situated over the center of the intersection. The light was green for the pickup truck in which the plaintiff was riding at the time the truck entered the intersection. The light facing the defendant was operating, but the bulb was burned out behind the red glass and he was unable to observe the red light indicating that motorists must stop.

The posted speed limit for motor vehicles in the vicinity where the accident occurred was 30 miles per hour. Witnesses testified to the effect that the plaintiff's father was not exceeding the speed limit prior to the collision.

For the plaintiff, Donald Cooper, a passenger in the defendant's autmobile, testified that he looked at the speedometer when defendant's automobile was about three blocks from the intersection, and the speed of the defendant's automobile at the time was between 38 and 40 miles per hour. He did not know whether the defendant had slowed down before reaching the intersection.

Roy West, also a witness for the plaintiff, testified that he was standing in the yard of his home on Euclid Avenue about one block from the intersection in question. He observed defendant's automobile as it approached the intersection and gave as his judgment that the automobile was traveling at a rate of from 40 to 45 miles per hour.

The defendant, in his own behalf, testified as to the speed at which he was driving as he approached the intersection as follows:

"Oh, about 30 miles an hour, to the best of my judgment."

As to the traffic light he testified:

"I did not see any traffic light burning; completely blank."

Charles Crabbe, a passenger in defendant's automobile, and a witness for the defendant, in response to a question on his direct examination as to whether he had a judgment as to the speed of defendant's automobile, replied:

"No, sir, I don't. I guess we were going around 30. We were not speeding."

Later he gave as his judgment that the defendant's car was traveling at 30 miles per hour in the vicinity of the intersection, though he was not looking at the speedometer. As to the traffic light Crabbe testi-

fied that the red light was burned out, and the light was blank towards defendant's side.

The truck entered the intersection first. The defendant testified that when he first noticed the truck in the intersection, he applied the brakes and swerved to the right. The vehicles then came into contact with each other, resulting in major injuries to the plaintiff.

The jury in the court below awarded damages to the plaintiff in the sum of $15,000. The defendant is now appealing from this verdict and judgment.

The defendant assigns as error the ruling of the trial court in refusing to give the following charge:

"6. I charge you, gentlemen of the jury, if you are reasonably satisfied from the evidence in this case that any witness has wilfully sworn falsely to any material fact, then you may disregard the testimony of such witness in its entirety."

The subject matter of this charge was not included in the oral charge of the court.

Charge 6 is typical of the permissive form of a "falsus in uno, falsus in omnibus" charge, that is, the jury may disregard all of the testimony of a witness in their discretion, providing the other essentials of the charge are present.

In Tennessee Coal, Iron & R. Co. v. Wilhite, 211 Ala. 195, 100 So. 135, Justice Miller held categorically, and mechanically, that it was error to refuse such charge. No consideration was given to the validity of the charge per se, nor to the background under which it was refused.

As long ago as 1886, this court in Jordan v. State, 81 Ala. 20, 1 So. 577, observed that "the tendency of modern authority is to relax and restrict the application of the maxim, falsus in uno, falsus in omnibus."

As shown by an excellent discussion of this charge found in 4 A.L.R.2d 1077, amply supported by authorities, the more correct view, and the one now receiving wide support in the courts, is that the charge tends to mislead and distort, and no error should be cast upon the trial court for its refusal. It has been pointed out in various cases that the charge is misleading, in that it does not define to the jury what is "material" evidence; it tends to impress the jury, that the judge thinks some of the witnesses are lying, and is specious in this respect in that a witness may lie as to immaterial matters without affecting his credibility; and every juror knows that it is the sole province of the jury to weigh the evidence, and the charge merely instructs the jury on what it already knows, and therefore serves no purpose.

In regard to "falsus in uno, falsus in omnibus" charges, Julian P. Alexander, in 12 Miss., L.J., at page 285, writes:

"The instruction should be tried by its own philosophy. If it is false in any particular, the court ought to have and exercise the right to reject it altogether. If the instruction has sufficient substance to rise only to the grade of doubtful merit, or the negative quality of being 'harmless,' it is at best legal rubbish and should be swept away."

In two recent cases this court, and the Court of Appeals have expressed deprecation of the falsus in uno charge, though in each case the court concluded that the lower court's instructions had rendered the refusal of the charge harmless.

In Beavers v. Boykin, 273 Ala. 413, 142 So.2d 10, this court wrote:

"In addition, this court has repeatedly urged caution in the application of the maxim 'falsus in uno, falsus in omnibus.' Tindell v. Guy, 243 Ala. 535, 10 So.2d 862. The prevailing attitude of the courts toward such instructions is 'one of tolerance and sufferance. The instructions labor under faint praise and are generally regarded as of little assistance to the juries.' 4 A.L. R.2d 1078. Professor Wigmore on Evi-

dence, § 1008, p. 675, states his view as follows:

" 'It may be said, once and for all, that the maxim is in itself worthless;—first, in point of validity, because in one form it merely contains in loose fashion a kernel of truth which no one needs to be told, and in the others it is absolutely false as a maxim of life; and secondly, in point of utility, because it merely tells the jury what they may do in any event, not what they must do or must not do, and therefore it is a superfluous form of words. It is also in practice pernicious, first, because there is frequently a misunderstanding of its proper force, and secondly, because it has become in the hands of many counsel a mere instrument for obtaining new trials upon points wholly unimportant in themselves.' "

The view of the Court of Appeals was expressed in Powell v. King, 39 Ala.App. 148, '96 So.2d 196, as follows:

"The 'falsus in uno, falsus in omnibus' cant has become an incrustation that impedes navigation to the ends of justice in that it so often causes the jury to try the witnesses rather than the issues."

Apparently overlooked in many of our cases considering the refusal of "falsus in uno" charges is the very salutary limitation on giving of such charges enunciated by Chief Justice Stone in Carter v. Chambers, '79 Ala. 223. The refused charge 3, to which Chief Justice Stone refers below was one involving the "falsus in uno, falsus in omnibus" principle. He wrote:

"Charge 3 was rightly refused, for two reasons: First, the record furnishes no testimony which enables us to affirm that a falsehood was introduced in evidence. True, defendant offered and introduced the admitted testimony of one witness, that he heard plaintiff make a certain declaration, while several other witnesses, having equal opportunity of hearing the declaration if made, testified they did not hear it. This probably cast on the jury the duty of weighing the testimony; but, without more, it could furnish no ground for the application of the rule invoked. 'Cases of conflicting statement, or conflicting recollection, frequently occur; and it would be a dangerous precedent, as well as an unsound rule, to visit on the party whose side of the contest was sustained by the minority of the witnesses, the severe intendment which the law denounces against the suborner, or procurer of simulated or manufactured testimony.' "

Counsel for appellant contends that the conflict in the evidence as to the speed of the defendant's automobile, and as to whether the luminescence from the side of the traffic light could be seen as one approached the light, necessitated the giving of Charge 6.

■ We think it a matter of common knowledge that the reflection, or luminescence, from the side lights of a traffic light can be observed as one approaches a traffic light. The evidence as to this fact was of no significance.

■ The testimony as to the speed of defendant's automobile was all opinion evidence, merely estimated, and the variance was no more than that usually and normally present in a trial. Under Chief Justice Stone's pronouncement above noted, no error resulted from the refusal of Charge 6.

■ The defendant assigns as error the ruling of the trial court in refusing to give the following charge:

"7. I charge you gentlemen of the jury that in considering the testimony of the plaintiff in this case you are entitled to consider same in the light of the fact that she is interested in the outcome of the case, and you may therefore accord her testimony such weight and credence as in your sound judg-

ment it merits under the circumstances."

Refusal of this charge was not error, because it pretermitted consideration of evidence in the cause which may have been accepted by the jury as lending weight to the plaintiff's testimony. Birmingham Electric Co. v. Mealing, 214 Ala. 597, 108 So. 511; Wilkins v. State, 98 Ala. 1, 13 So. 312.

The defendant further contends that the trial court erred in refusing to give defendant's requested charges predicated on contributory negligence on the part of the plaintiff and in giving the affirmative charge with hypothesis in favor of the plaintiff as to contributory negligence.

The defendant argues that the question of contributory negligence should have gone to the jury based on violation of our statutory rules of the road. The statute referred to is set out in Title 36, § 58(30), Code of Alabama 1940 (Recomp.1958), as follows:

"(a) No person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle, or as to interfere with the driver's control over the driving mechanism of the vehicle.

"(b) No passenger in a vehicle or street car shall ride in such position as to interfere with the driver's or motorman's view ahead or to the sides, or to interfere with his control over the driving mechanism of the vehicle or street car. (1949, p. 746, § 30, effective Jan. 1, 1950.)"

■■ It is true that the pickup truck in which the plaintiff was riding was occupied by four persons on the single seat of the truck. However, the above statute is only violated when the passengers are in such a position as to interfere with the driver's view or control. In the instant case, there is no evidence whatsoever that the four occupants of the pickup truck caused inter-

ference with either the driver's view or control. In fact, the evidence shows that all four persons were seated with their backs against the seat.

■ Evidence which affords nothing more than mere speculation, conjecture or guess is wholly insufficient to warrant the submission of a case to the jury. Watterson v. Conwell, 258 Ala. 180, 61 So.2d 690; Louisville & N. R. Co. v. Rogers, 242 Ala. 448, 6 So.2d 874; St. Louis & S. F. R. Co. v. Dorman, 20 Ala. 609, 89 So. 70. Hence, there was no error committed by the trial court in its rulings on the charges relative to contributory negligence.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.